**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RÖBYNN EUROPE,

                *Plaintiff,*

    -against-

EQUINOX HOLDINGS, INC. d/b/a
EQUINOX FITNESS CLUB,
EQUINOX EAST 92ND STREET, INC.,
JOSE TAVERAS, *individually,*
CHRISTOPHER MALTMAN, *individually,*
*and* ADAM GECHT, *individually,*

                *Defendants.*

**Case No.** 20-cv-7787

**JURY TRIAL DEMANDED**

**COMPLAINT**

---

## NATURE OF ACTION

1.    Plaintiff Röbynn Europe ("Plaintiff"), by her attorneys, Crumiller P.C., brings this action against Equinox East 92nd Street, Inc. and Equinox Holdings, Inc. d/b/a Equinox Fitness Club ("Equinox"), Christopher Maltman ("Maltman") and Jose Taveras ("Taveras") (collectively "defendants") because defendants (a) engaged in, and/or refused to remediate, hostile and offensive comments made by management to employees of people of color; (b) endorsed, accommodated, and abetted the racially discriminatory requests of their clients; and, (c) rather than address these issues, fired plaintiff in retaliation for her complaints. Defendants' actions were in violation of in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2.    Plaintiff also brings this action against Defendants for disability-based discrimination and retaliation in response to her protected activities of requesting reasonable

accommodations for her disability, in violation of the Americans with Disabilities Act, 42 U.S. Code § 12101 ("ADA"), NYSHRL and NYCHRL.

## PARTIES

3.      Plaintiff Röbynn Europe is a Black woman residing in New York City, County of Queens. Plaintiff was employed by defendants from on or about November 20, 2018, until her employment was terminated on September 26, 2019.

4.      Defendant Equinox Holdings, Inc. d/b/a Equinox Fitness Club is a foreign business corporation which operates a large portfolio of fitness brands and owns over 135 locations within major cities across the United States.

5.      Defendant Equinox East 92nd Street, Inc. is a domestic business corporation with a primary place of business located at 203 East 92nd Street, New York, NY 10128.  Equinox East 92nd Street, Inc. is a fitness club that services clients in New York City.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1343.  This Court has supplemental jurisdiction over plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of New York pursuant to 29 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On January 24, 2020, plaintiff filed a timely Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC").

9.      On September 16, 2020, the EEOC issued plaintiff a Notice of Right to Sue.

## FACTUAL ALLEGATIONS

10.     Plaintiff Röbynn Europe is a competitive bodybuilder and certified personal trainer with 14 years of professional personal training experience and six years of fitness and training management experience.

11.     Equinox Regional Director Michael Caporusso hired plaintiff as a Fitness Manager in November, 2018, at the East 61st Street Equinox location.

12.     Plaintiff excelled in this position, and Mr. Caporusso swiftly promoted her to the position of Personal Training Manager at the East 92nd Street location, at the end of December 2018.

13.     In her role as Personal Training Manager, plaintiff supervised the fitness staff and day-to-day operations of the Equinox fitness program at the East 92nd Street Equinox location.

14.     Plaintiff performed very well in this role: Under her leadership, the personal training department achieved its new client goals and sales goals, and plaintiff used her strong relationships with outside organizations to recruit and hire highly sought-after new training talent.

15.     As Personal Training Manager, plaintiff supervised approximately 15 fitness employees, including Fitness Manager Christopher Maltman.

16.      From the time plaintiff was promoted to Personal Training Manager in late December 2018, Maltman, a white man, refused to accept plaintiff, a Black woman, as his supervisor, and repeatedly informed her that she should not be his supervisor.

**Maltman Creates a Hostile Work Environment**

17.     After telling plaintiff directly that she should not be his supervisor, Maltman acted on this view by treating plaintiff in an inappropriate and disrespectful manner, and generally creating a hostile work environment pertaining to race, gender and disability.

18.     The prior Personal Training Manager at the 92nd location had warned plaintiff that Maltman was sexually fixated on Black women and that he made numerous inappropriate comments to and about Black women in the workplace.

19.     Indeed, Maltman began sharing his unsolicited physical appraisal of Black women, including both clients and others, with plaintiff, making objectifying comments about how "hot" their bodies were and trying to engage plaintiff in conversation about which ones were the most sexually attractive. Plaintiff did not care to discuss anything of a sexual nature with Maltman, and she therefore refused to participate.

20.     Maltman also raved to plaintiff about the body of a former Equinox trainer whom he described as a young "Black girl with giant tits" who looked "like a porn star," according to Maltman. Again, plaintiff refused to participate.

21.     On one particular occasion during the winter or early spring of 2019, Maltman, who was middle-aged, demanded that plaintiff wait with him outside the gym for a very young Black woman to emerge from the neighboring café where she worked, so that he could make a pass at this young woman; his idea was that the presence of another Black woman – i.e., plaintiff – would reassure the much younger Black woman he was targeting, legitimize him and make her more receptive to his sexual advances. Plaintiff was offended by all of this sexually hostile and racist conduct, and refused to be a racial pawn in Maltman's inappropriate and predatory scheme.

22.     In addition to this sexually inappropriate conduct, Maltman also made numerous discriminatory comments to and about other Equinox staff members.

23.     For example, Maltman repeatedly referred to Black and other non-white staff as "lazy" and untrustworthy, and openly stated his intention to get them fired.

24.     As another example, one of the trainers, Martin "M." Melendez, identified as "non-binary," and asked their Equinox colleagues to refer to them using the gender-neutral pronouns "they" and "them." Maltman not only flatly refused, and deliberately misgendered M. in an effort to harass them, but also subjected M. to homophobic and sexist remarks.

25.     For example, Maltman often referred to M. as a "little bitch" and fixated on M.'s physical appearance by ridiculing M.'s gym shorts, which Maltman deemed to be too short and therefore effeminate. Upon information and belief, these remarks made M. feel marginalized and humiliated, and offended other employees including but not limited to plaintiff.

26.     Maltman also habitually required M. Melendez and a Black trainer named Skyy to leave the workplace in order to go out and fetch food for various events at the club. Upon information and belief, Maltman did not require white trainers to perform such menial tasks for him. M. confided in plaintiff that he found this practice to be "degrading," in that Maltman was treating him like "the help."

27.     Another trainer, Michael Lantino, was dating an openly transgender woman, and Maltman frequently made transphobic remarks about Mr. Lantino's girlfriend, expressing his disgust and demanding to know how Mr. Lantino could possibly stand to date a transgender woman. These comments were totally unsolicited and often made openly in front of other employees for the purpose of humiliating Mr. Lantino.

28.     Maltman also made inappropriate comments to Sabrina McGeary, another Black woman whom plaintiff also supervised:

29.     For example, Maltman repeatedly insisted that she must be related to another Black woman who worked at the front desk based on nothing more than their racial characteristics, including their medium skin tone and hair texture; Maltman persisted in making these race-based comments even after being told repeatedly that the two women were not related, and even after plaintiff directed him to stop and specifically told him not make assumptions about employees or clients based on their racial characteristics.

30.     Maltman also repeatedly teased Ms. McGeary about being "autistic."

31.     Maltman also repeatedly made lewd and objectifying comments about the fit of Ms. McGeary's gym leggings and how they showed off her figure, which made her visibly uncomfortable.

32.     Maltman's continuous stream of inappropriate comments regarding not only plaintiff, but those whom he supervised, made it more difficult for plaintiff to do her job, and created a toxic atmosphere in which plaintiff felt constantly derided and undermined as a Black woman in the workplace. Yet when plaintiff raised these issues with Equinox's management, rather than address and fix those issues, they targeted plaintiff for reprisals.

**Equinox Staff Fights Back; Taveras & Equinox Take No Remedial Action**

33.     Throughout the winter and spring of 2019, plaintiff complained to about Maltman's discriminatory and offensive behavior at regular intervals, to no avail.

34.     These discussions with Taveras usually took place in Taveras' office, or else in a vacant membership office where Taveras sometimes worked, following the resignation of several membership advisors.

35.     As a result of Maltman's inappropriate conduct toward Ms. McGeary, Ms. McGeary told plaintiff that she did not feel safe meeting one-on-one with Maltman, and asked plaintiff to supervise their meetings from then on.

36.     Plaintiff repeatedly asked Maltman to stop making offensive and inappropriate comments, but he would not comply, insisting that his comments were appropriate and refusing to change his behavior.

37.     Trainer Anthony Heath then reported to plaintiff that Maltman had told him and other subordinates not to listen to plaintiff because, according to Maltman, plaintiff did not understand how things worked at Equinox.

38.     Plaintiff did not have the authority to formally discipline Maltman or to terminate Maltman's employment.

39.     Plaintiff therefore complained again, in detail, to General Manager Jose Taveras about Maltman's discriminatory behavior, and also about Maltman's gross insubordination in refusing her directive to cease the discriminatory and offensive behavior.

40.     Failing to grasp the seriousness of the situation, Taveras vaguely responded: "I'll talk to him." Whether Taveras did so or not, Maltman's discriminatory behavior continued unabated.

**Equinox Retaliates Against Plaintiff**

41.     Remarkably, instead of remediating Maltman's inappropriate conduct following plaintiff's complaints about him, Equinox began to discipline plaintiff instead: On April 15, 2019, Equinox issued plaintiff a written Record of Discussion ("ROD") for "attendance and punctuality." This written disciplinary notice was a clear pretext for retaliation, for the following reasons:

42.     First, managers did not clock in or out of work, and official manager start times were not generally enforced; other Equinox managers who hadn't complained of discrimination, including both Taveras and Maltman, regularly arrived at work well after their official start-times without consequence. Further, Maltman often left work early without repercussion.

43.     Second, instead of clocking in as hourly employees would, Equinox managers merely scanned in with their cards, just as clients did, and did not necessarily scan their cards directly upon arrival[1]; indeed, some managers never scanned in *at all* on certain work days, but they were not deemed to have been absent from work on those days. Equinox nonetheless deemed plaintiff's arrival times to be the times at which she scanned in, not the times when she actually arrived and began working, and counted her as late regardless of when she had actually arrived.

44.     Third, plaintiff was never late for a training appointment with a client, never kept a client waiting, and regularly stayed an hour or more past the end of her shift regardless of what time she had arrived. This was because there was often way more work than could be completed in the 10-hour shift; also, due to Maltman's early departures, plaintiff had to deal with any issues that arose in the evening after Maltman had left, and also had to call new members to schedule their complimentary training sessions, which was a part of Maltman's job description that he frequently failed and refused to perform.

45.     Indeed, plaintiff worked substantially more than the required number of hours.

---

[1] Because the elevator was located directly inside the front door, which was about 10 feet away from the reception desk where the scanner was located, it was very common for managers to simply step onto the elevator upon entering the building, without advancing to the reception desk to scan in.

46.     Plaintiff therefore understood that she was being singled out for selective enforcement of time and attendance policies in retaliation for having engaged in legally protected activities.

47.     Around the time of plaintiff's April 15, 2019 ROD, Taveras warned plaintiff that she must always go to him first, before reporting anything to HR, emphasizing that if he got "any calls from HR" that plaintiff hadn't warned him about first, he and plaintiff would "have serious problems." Plaintiff reasonably understood this remark as a blatant threat of further retaliation.

**Plaintiff Refuses to Assign Trainers Based on Race;**
**Equinox Overrides Plaintiff and Accommodates Client's Request for a "White" Trainer**

48.     Rather than address the issues Plaintiff had raised, Equinox tried to make plaintiff an accomplice to its discriminatory policies: On June 4, 2019, at approximately 9:00PM, a new, white, male client approached Membership Advisor Cori Faerman and expressly stated that his trainer needed to be "white."

49.     Ms. Faerman then called plaintiff and relayed this discriminatory request to her. Plaintiff replied that she could not accommodate such a request, as it was blatant race discrimination, and that Equinox trainers could not be precluded from working with clients (and by extension, earning wages, since trainers are paid per session) based upon their race.

50.     Plaintiff reported the incident to Taveras via phone that same night and told him that she refused to oblige the client's discriminatory request for a "white" trainer.

51.     In response, Taveras asked plaintiff to send him a written statement about the incident.

52.     In accordance with his request, by email dated June 5, 2019, plaintiff sent Taveras, along with Regional Director Adam Gecht[2] and the Human Resources Department, a written statement complaining explicitly of a race-based "hostile work environment," and adding: "I do not deserve to have white coworkers ask me to put my humanity or the humanity of our staff aside for their sales." Neither Gecht nor Taveras responded to this email, and nobody at Equinox ever addressed plaintiff's complaint about "hostile work environment."

53.     Instead, Taveras completely ignored plaintiff's concerns and *honored the client's racist request.*

54.     Taveras then assigned the duty of managing the account, which should have been plaintiff's duty in the ordinary course of business, to Maltman.

55.     These actions sent a message to both the client and the staff that Equinox accepts and condones race discrimination, which further compounded the race-based hostile work environment.

56.     Later than same day, plaintiff received a second ROD for "late" arrivals. Regional Director Gecht took the unusual step of personally attending the meeting wherein this write-up was issued to plaintiff. Plaintiff asked him if she was actually getting written up in response to her complaint of race discrimination. Gecht sternly admonished plaintiff not to "assume" there was any connection between her complaints and her disciplinary warnings, and refused to discuss the matter any further.

---

[2] Regional Director Gecht would work out of the East 92nd Street Equinox location about approximately one day per week during the period of plaintiff's employment. Plaintiff copied Gecht on this email because she had previously spoken to him, both verbally and via email, about Taveras' failure to timely respond to her complaints and concerns.

57.     However, it was clear that the Company's continued selective enforcement of its attendance policy upon plaintiff was in retaliation for her protected activities, and it was precisely such attendance matters that Equinox would use as a pretext for plaintiff's termination.

58.     Plaintiff therefore wrote in the "employee comments" section of this ROD that she was being singled out unfairly for attendance-based discipline while her colleagues were permitted to engage in the same conduct "without repercussion."

59.     Much like her complaint of hostile work environment, nobody at Equinox addressed plaintiff's written concerns regarding disparate enforcement of time and attendance policies.

60.     Instead, on September 24, 2019, just months after her complaints of race discrimination, Equinox terminated plaintiff's employment, using her purported tardiness as a pretext for the termination.

61.     Equinox told plaintiff that her tardiness was the sole reason for her termination, and handed her a "Record of Involuntary Separation."

62.     In the "additional notes/comments" section, plaintiff wrote that her termination was "biased and targeted," adding: "...because I often call attention to issues in the club, I am being targeted unfairly…there is bias here."

63.     By email dated September 26, 2019, plaintiff expressly complained of retaliation to HR. By reply email, HR thanked her for expressing her concerns, but refused to address her concerns or offer her reinstatement.

64.     Plaintiff thereafter applied for unemployment insurance employment benefits, but Equinox further retaliated by actively blocking her from receiving such benefits, which left her in a state of financial panic, without any source of income whatsoever.

65.     In addition to plaintiff, at least two other former Equinox employees departed the Company during the period of her employment due to the race-based hostile work environment at the 92nd Street location.

66.     Further, a third Equinox employee who has worked at Equinox since the time when plaintiff worked there reports that Maltman routinely discriminated against employees of color, especially Black employees, by making racially hostile comments and by routinely funneling clients and referrals to less senior white trainers, skipping over more senior Black trainers and trainers of color, which diminishes their earnings on the basis of race.

67.     This employee, who is Black, also reports that Maltman directed him to carry a white client home on his back, when the white client's shoes were apparently stolen from the gym.

68.     This employee has complained repeatedly to Taveras about Maltman's discriminatory behavior, but Taveras has repeatedly refused to take remedial action. Instead, more recently, Maltman has been transferred to another Equinox location so that he may start afresh as Fitness Manager with new group of trainers and colleagues in that location.

69.     Upon information and belief, numerous Equinox employees have complained about discriminatory comments and conduct by Maltman, who continues to be employed as an Equinox Fitness Manager.

70.     About a month after plaintiff's termination, Gecht was promoted from Regional Director to Director of International Operations.

**The Effect on Plaintiff**

71.    Even before her wrongful termination, plaintiff suffered substantial emotional distress as a result of Defendants' acts and omissions alleged herein, and often discussed the emotional impact of Defendants' conduct with her psychotherapist.

72.    Equinox's conduct in siding with, and catering to, an overtly racist customer about whom plaintiff had complained was particularly humiliating and demoralizing for plaintiff.

73.    This emotional distress, and the hostile work environment that Defendants created and maintained, exacerbated plaintiff's bulimia and derailed her recovery.

74.    Plaintiff's treatment and the overall environment at Equinox exacerbated her bulimia, and, at her physician's direction, plaintiff sought an accommodation for this disability in July 2019. The accommodation was a scheduling adjustment that would allow her attend evening treatment three times per week, to address her worsening symptoms. Plaintiff sought this accommodation directly from HR, and did not discuss it with Taveras beforehand.

75.    Maltman and Taveras both resented plaintiff for requesting this accommodation: Maltman complained bitterly about it because it interfered with his practice of leaving work early; Taveras began treating plaintiff in an especially stern and hostile manner because she had gone to HR to request this accommodation without checking with him first, contrary to his warning.

76.    Taveras had also previously expressed animus toward plaintiff when she had requested another accommodation toward the beginning of her employment, this time in the form of permission to be excused from a "mandatory" dinner meeting, due to her bulimia. Even after Taveras had learned that HR had excused plaintiff from the dinner upon receipt of a note from

her healthcare provider, he admonished her that, as a manager, she should really "make an

effort" to attend the dinner regardless of her disability.

77.     Thus, while Equinox ostensibly granted plaintiff's requests for accommodation,

these e protected activities made plaintiff the target of additional animus and negative treatment.

78.     Plaintiff's termination compounded the emotional impact of Defendants' conduct

by leaving her without any income and illustrating to her that Equinox would rather fire a

talented and high-performing Black manager than remediate the race discrimination and race-

based harassment that she was made to endure.

**FIRST CAUSE OF ACTION:**
**Discrimination in Violation of Title VII**
**Against the Corporate Defendants**

79.     Plaintiff repeats and realleges each and every allegation set forth above with the

same force and effect as if fully set forth herein.

80.     Defendants unlawfully discriminated against plaintiff in the terms and conditions

of her employment by creating and maintaining a hostile work environment and by terminating

her employment on the basis of her race in violation of Title VII.

81.     Defendants' discriminatory acts caused plaintiff to suffer economic damages,

including lost wages, commissions, and benefits, as well as emotional and physical distress.

82.     Defendants acted with malice and/or reckless indifference to plaintiff's rights,

entitling her to an award of punitive damages.

83.     Therefore, defendants are liable to plaintiff for back pay, front pay, emotional

distress and other compensatory damages, punitive damages, prejudgment interest, post-

judgment interest, attorneys' fees, costs and disbursements.

## SECOND CAUSE OF ACTION:
### Retaliation in Violation of Title VII
### Against the Corporate Defendants

84.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

85.     Defendants unlawfully retaliated against plaintiff by terminating her employment on the basis of her protected activities, in violation of Title VII.

86.     Defendants' unlawful retaliatory acts caused plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

87.     Defendants acted willfully, with malice and/or reckless indifference to plaintiff's rights, entitling plaintiff to an award of punitive damages.

88.     Therefore, defendants are liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## THIRD CAUSE OF ACTION:
### Discrimination in Violation of the 42 U.S.C. § 1981
### Against the Corporate Defendants

89.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

90.     Defendants unlawfully discriminated against plaintiff in the terms and conditions of her employment by creating and maintaining a hostile work environment and by terminating her employment on the basis of her race in violation of 42 U.S.C. § 1981.

91.     As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful discriminatory acts against plaintiff, in violation of 42 U.S.C. § 1981.

92.    Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful discrimination against plaintiff in violation of 42 U.S.C. § 1981.

93.    Defendants' discriminatory acts caused plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

94.    Defendants acted with malice and/or reckless indifference to plaintiff's rights, entitling her to an award of punitive damages.

95.    Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## FOURTH CAUSE OF ACTION:
### Retaliation in Violation of the 42 U.S.C. § 1981
### Against the Corporate Defendants

96.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

97.    Defendants unlawfully retaliated against plaintiff by terminating her employment on the basis of her protected activities in violation of 42 U.S.C. § 1981.

98.    As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful retaliatory acts against plaintiff, in violation of 42 U.S.C. § 1981.

99.    Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful retaliation against plaintiff in violation of 42 U.S.C. § 1981.

100.     Defendants' unlawful retaliatory acts caused plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

101.     Defendants acted willfully, with malice and/or reckless indifference to plaintiff's rights, entitling plaintiff to an award of punitive damages.

102.     Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

**FIFTH CAUSE OF ACTION:**
**Discrimination in Violation of the NYSHRL**
**Against All Defendants**

103.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

104.     Defendants unlawfully discriminated against plaintiff in the terms and conditions of her employment by creating and maintaining a hostile work environment and by terminating her employment on the basis of her race, sex and disability in violation of the NYSHRL.

105.     As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful discriminatory acts against plaintiff, in violation of NYSHRL § 296(6).

106.     Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful discrimination against plaintiff in violation of NYSHRL § 296(1).Defendants' discriminatory acts caused plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

107.     Defendants acted with malice and/or reckless indifference to plaintiff's rights, entitling her to an award of punitive damages.

108.     Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

### SIXTH CAUSE OF ACTION:
**Retaliation in Violation of the NYSHRL**
**Against All Defendants**

109.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

110.     Defendants unlawfully retaliated against plaintiff in the terms and conditions of her employment and by terminating her employment on the basis of her protected activities, in violation of NYSHRL.

111.     As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful retaliatory acts against plaintiff, in violation of NYSHRL § 296(6).

112.     Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful retaliation against plaintiff in violation of NYSHRL § 296(1).Defendants' unlawful retaliatory acts caused plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

113.     Defendants acted willfully, with malice and/or reckless indifference to plaintiff's rights, entitling her to an award of punitive damages.

114.     Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## SEVENTH CAUSE OF ACTION:
### Discrimination in Violation of the NYCHRL
### Against All Defendants

115.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

116.     Defendants unlawfully discriminated against plaintiff in the terms and conditions of her employment by creating and maintaining a hostile work environment and by terminating her employment on the basis of her race, sex and disability in violation of the NYCHRL.

117.     As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful discriminatory acts against plaintiff, in violation of NYCHRL.

118.     Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful discrimination against plaintiff in violation of NYCHRL.

119.     Defendants' discriminatory acts caused plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

120.     Defendants acted with malice and/or reckless indifference to plaintiff's rights, entitling her to an award of punitive damages.

121.     Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## EIGHTH CAUSE OF ACTION:
### Retaliation in Violation of the NYCHRL
### Against All Defendants

122.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

123.    Defendants unlawfully retaliated against plaintiff in the terms and conditions of her employment and terminated her employment on the basis of her protected activities, in violation of NYCHRL.

124.    As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful retaliatory acts against plaintiff, in violation of NYCHRL.

125.    Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful retaliation against plaintiff in violation of NYCHRL. Defendants' unlawful retaliatory acts caused plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

126.    Defendants acted willfully, with negligence or reckless indifference to plaintiff's rights, entitling her to an award of punitive damages.

127.    Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

**NINTH CAUSE OF ACTION:**
**Discrimination in Violation of the ADA**
**Against All Defendants**

128.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

129.    Defendants unlawfully discriminated against plaintiff in the terms and conditions of her employment by terminating her employment on the basis of her disability in violation of the ADA.

130.    As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful discriminatory acts against plaintiff, in violation of ADA.

131.    Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful discrimination against plaintiff in violation of ADA.

132.    Defendants' discriminatory acts caused plaintiff to suffer economic damages, including lost wages, commissions, and benefits, as well as emotional and physical distress.

133.    Defendants acted with malice and/or reckless indifference to plaintiff's rights, entitling her to an award of punitive damages.

134.    Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

### TENTH CAUSE OF ACTION:
**Retaliation in Violation of the ADA**
**Against All Defendants Except Maltman**

135.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

136.    Defendants unlawfully retaliated against plaintiff in the terms and conditions of her employment and terminated her employment on the basis of her requests for reasonable accommodation, in violation of the ADA.

137.    As described herein, defendants Taveras, Maltman and Gecht are personally, directly and individually liable in that they aided and abetted the corporate defendants in their unlawful retaliatory acts against plaintiff, in violation of the ADA.

138.    Alternatively, in terms of the economic realities of the workplace, defendants Taveras and Gecht are personally, directly and individually liable as employers for the unlawful retaliation against plaintiff in violation of the ADA.

139.    Defendants' unlawful retaliatory acts caused plaintiff to suffer economic damages, including lost wages as well as emotional distress damages.

140.    Defendants acted willfully, with negligence or reckless indifference to plaintiff's rights, entitling her to an award of punitive damages.

Therefore, defendants are jointly and severally liable to plaintiff for back pay, front pay, emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment that:

a)      Declares that the discriminatory and retaliatory actions, practices, and policies of Defendants as set forth above violated Title VII, 42 U.S.C. § 1981, the ADA, the NYSHRL, and the NYCHRL;

b)      awards monetary damages to plaintiff to compensate her for the discrimination and retaliation she experienced, including economic damages and damages for emotional distress;

c)      awards plaintiff punitive damages pursuant to Title VII, 42 U.S.C. § 1981, the ADA and the NYCHRL and;

d)      awards plaintiff reasonable attorneys' fees and costs in this action; and

e)      grants such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP § 38(b), plaintiff demands a trial by jury.


Dated: Brooklyn, New York
       September 22, 2020


                              Respectfully submitted,
                              Crumiller P.C.

                              By:   _____
                              Chloe Liederman
                              Susan K. Crumiller
                              16 Court St, Ste 2500
                              Brooklyn, NY 11241
                              (212) 390-8480
                              cl@crumiller.com
                              *Attorneys for Plaintiff*