```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK


In re:                          :
                                    Docket #1:20-cv-07787-
EUROPE,                         : JGK-KHP

                Plaintiff,      :

   - against -                  :

EQUINOX HOLDINGS, INC. et al,   : New York, New York
                                  August 25, 2021
                Defendant.      :
                                  TELEPHONE CONFERENCE
------------------------------------ :


                    PROCEEDINGS BEFORE
             THE HONORABLE KATHARINE H. PARKER,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:              CRUMILLER P.C.
                            BY:  HILARY JOY ORZICK, ESQ.
                                 CHLOE LIEDERMAN, ESQ.
                            16 Court Street, Suite 2500
                            Brooklyn, New York 11241


For Defendants Equinox      JACKSON LEWIS P.C.
Holdings, Inc. and          BY:  JASON A ZOLDESSY, ESQ.
Christopher Maltman:             GREGORY S. SLOTNICK, ESQ.
                            666 Third Avenue
                            New York, New York 10017




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

```
For Defendant Adam         LEWIS BRISBOIS BISGAARD & SMITH LLP
Gecht:                     BY:  ELIOR DANIEL SHILOH, ESQ.
                           77 Water Street, Suite 2100
                           New York, New York 10005
```

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|

<u>**Witness**</u>

None

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|

None

1                          PROCEEDINGS                    4

2              THE CLERK:  Calling case 20 civil 7787, Europe

3    versus Equinox Holding, Incorporated; the Honorable

4    Katharine H. Parker, presiding.

5              Beginning with counsel for the plaintiffs, could

6    you please make your appearance for the record?

7              MS. HILARY J. ORZICK:  Good afternoon, this is

8    Hilary Orzick from Crumiller P.C. on behalf of plaintiff.

9    And I'm joined by my colleague -- I'll let her introduce

10   herself.

11             MS. CHLOE LIEDERMAN:  This is Chloe Liederman from

12   Crumiller P.C.  Good afternoon.  I am appearing for the

13   plaintiff along with Ms. Orzick.

14             HONORABLE KATHARINE H. PARKER (THE COURT):   Good

15   afternoon.

16             THE CLERK:  And beginning with counsel for

17   defendant Equinox Holding and Mr. Maltman, could you please

18   make your appearance for the record?

19             MR. JASON ZOLDESSY:  Yes.  Good afternoon, your

20   Honor.   This is Jason Zoldessy, along with my colleague,

21   Greg Slotnick, from Jackson Lewis P.C.  We're counsel for

22   the Equinox defendants as well as defendant Christopher

23   Maltman.

24             MR. GREGORY S. SLOTNICK:  Good afternoon, your

25   Honor.

```
 1                       PROCEEDINGS                    5

 2            THE COURT:  Good afternoon.

 3            THE CLERK:  And counsel for Mr. Gecht, can you

 4   please make your appearance for the record?

 5            MR. ELIOR SHILOH:  Elior Shiloh from the law firm

 6   of Lewis Brisbois Bisgaard & Smith on behalf of Adam Gecht.

 7            THE COURT:  Okay.  Good afternoon.

 8            A few preliminaries before we get started.  I ask

 9   that you keep your phones on mute, unless you're speaking,

10   to eliminate background noise.  I ask that you state your

11   name before speaking for clarity of the record.  The Court

12   is making a recording of this conference.  If you'd like a

13   transcript, you can order one.  It must be ordered within

14   three days.

15            Finally, the court's conference line is open to

16   the press and public on a listen-only basis.  And I want to

17   remind everyone on the call that the court prohibits others

18   from recording and rebroadcasting court conferences.

19   Violations of this rule may result in sanctions.

20            So initially this case was referred for a

21   particular discovery issue that has now been resolved, and

22   then the case was referred for more general pretrial

23   management.  And I understand there are a couple of

24   discovery disputes.

25            First, I want to address the deposition issue.  As
```

```
 1                          PROCEEDINGS                6
 2  I understand it, Mr. Shiloh, you did not get to depose the
 3  plaintiff fully, and you need some additional time; is that
 4  right?
 5            MR. SHILOH:  That's correct, your Honor.  If your
 6  Honor would like me to present our position on it, I can;
 7  or I can rely on our papers.
 8            THE COURT:  Yes.  I read your papers.  What's the
 9  problem from plaintiff's perspective?  Why can't Mr. Gecht,
10  who's a separate defendant, question the plaintiff?
11            MS. ORZICK:  Your Honor, plaintiff doesn't dispute
12  that defendant has the right to continue to depose the
13  plaintiff.  And we have no objection to him doing so.  By
14  defendant's own calculation, only 43 minutes of the seven
15  hours remain.  Counsel for defendant Gecht originally said
16  he had about an hour and a half of questioning remaining
17  during the last deposition, and so we as an offer of
18  compromise, even though he's only entitled to the 43
19  minutes absent a court order, offered to produce plaintiff
20  for an additional hour and a half on the record.  But
21  defendant Gecht is now arguing that he needs four hours on
22  the record, which we believe is excessive and harassing.
23            THE COURT:  Mr. Gecht, four hours does seem
24  excessive.  What information do you need to obtain that
25  wasn't already obtained during the first portion of the
```

```
 1                        PROCEEDINGS                    7

 2   deposition?

 3          MR. SHILOH:  Your Honor, the standard here is good

 4   cause, and it's based on the case and specific facts.  And

 5   good cause is [indiscernible], because when the first

 6   deposition was taken of the plaintiff, it was taken by

 7   Jackson Lewis, who is counsel to Equinox, Chris Maltman.

 8   They asked questions on behalf of Equinox and Chris

 9   Maltman.  And then there was even a party that has not been

10   served, Jose Taveras, where they inquired and spent a

11   considerable amount of time relating to interactions

12   between the plaintiff and Jose Taveras.  You know, at the

13   deposition itself, for reasons unknown to me, counsel took

14   the position I was prohibited to even ask questions.  And

15   we were also delayed further at the deposition because of

16   the discovery dispute where we had Judge Koeltl intervene.

17          Since the deposition itself has taken place, there

18   have been developments as far as testimony.  There have

19   been at least four or five depositions that have taken

20   place where testimony's been placed on the record, new

21   discovery information relating to my client; and there's

22   been also further document production in this case relating

23   to the overall case and my client.  And considering that my

24   client is a named party, he at the very least is entitled

25   to -- I'm not asking for the whole amount -- I'm asking for
```

```
1                          PROCEEDINGS                    8
2   four hours, and hopefully it will be less than that, your
3   Honor.  But to be only given an hour and a half on behalf
4   of somebody who wasn't even able to ask any questions.  And
5   I believe Jackson Lewis took a proper deposition.  It
6   wouldn't be fair to my client to simply rely on their
7   questioning.  I'm trying to defend my client.  There's no
8   prejudice --
9             THE COURT:  Sure.  I understand that, Mr. Shiloh,
10  but you haven't fully described what the separate areas of
11  inquiry would be that would require four hours for you.  I
12  mean, there's going to be overlap, obviously, in the
13  questions you'd be asking the plaintiff.  So --
14            MR. SHILOH:  Sure, your Honor.  I --
15            THE COURT:  -- I'm trying to better understand
16  what is it that's unique to your client that hasn't already
17  been gone over?
18            MR. SHILOH:  Well, I believe it takes more than an
19  hour and a half for me to ask questions with respect to the
20  plaintiff's communications with my client, the plaintiff's
21  allegations in the case relating to my client.  I believe
22  I'm permitted to ask questions about other people who were
23  involved in her termination, signed off on her separation
24  from the company, who were involved in those meetings.
25  There have been schedules that have been produced since her
```

1                          PROCEEDINGS                    9

2  deposition setting forth attendance records.  And it will

3  take more than an hour and a half, your Honor, to go

4  through that material with the plaintiff.  And at the end

5  of the day, my client shouldn't be limited to an hour and a

6  half when he's been named in a Complaint and the plaintiff

7  is seeking -- has made salacious accusations against him

8  and is seeking damages against him.

9          THE COURT:  But, Mr. Shiloh, are these areas of

10  inquiry things that were not already asked of plaintiff?

11          MR. SHILOH:  Yes.  They are areas -- I made it

12  clear -- yes, they are not the same areas.  And it is not

13  my practice to repeat a question that's already been asked

14  by Equinox.  I've taken the time to review the transcript

15  and to limit my questioning to what has not already been

16  asked and what is specific to my client.

17          I hope to be done --

18          MS. ORZICK:  Your Honor, may I respond?

19          MR. SHILOH:  -- in [indiscernible] hours, you

20  know, if everything goes smoothly, your Honor.

21          THE COURT:  All right, I'll allow plaintiff a

22  minute to respond.

23          MS. ORZICK:  Thank you, your Honor.  Just briefly,

24  it is not plaintiff's fault that defendants inadequately

25  portioned out their time.  Defendant Equinox did question

```
 1                          PROCEEDINGS              10
 2    our client for six hours and 17 minutes, at the very least.
 3    That's by defendant Gecht's own calculation.  And so the
 4    fact that they left him only 43 minutes is not, you know,
 5    plaintiff's fault; doesn't necessarily warrant an extension
 6    because of poor time management.
 7            Second, the fact that there have been additional
 8    documents produced is against a fault of defendants, not of
 9    plaintiff.  And so, you know, the fact that he wants to
10    extend her deposition based on defendant's own belated
11    production is really not warranted.
12            And then, finally, there just is not four hours'
13    worth of testimony that can be drawn out from our client,
14    considering what she has already testified to.  We are
15    deeply concerned that defendant Gecht, as he had previously
16    even -- as his counsel relayed to us, that he intends to
17    use this opportunity to, quote/unquote, "confirm"
18    plaintiff's prior testimony.  So we are deeply concerned
19    that he is using this opportunity inappropriately to harass
20    the client and to re-ask her questions she's already been
21    asked.
22            So, again, your Honor, we don't object to him --
23    to producing our client.  We don't object to even providing
24    additional time.  We've more than doubled the time
25    allocated to give him an hour and a half, which really
```

```
 1                        PROCEEDINGS                11
 2   should be adequate.  But we really do think that four hours
 3   is excessive and unwarranted, given the circumstances.
 4            THE COURT:  All right, I've heard enough.  Thank
 5   you very much to both sides.  I'm going to permit
 6   Mr. Shiloh to depose the plaintiff for up to three hours.
 7   And Mr. Shiloh, you should not go over things that there
 8   was already testimony on.  It's one thing -- I'm not going
 9   to preclude you from getting clarification if something is
10   clarifying, so that's of course going to be permitted.  But
11   you shouldn't be asking questions that are redundant of
12   information that's already been testified to by the
13   plaintiff.  So three hours, and you all should schedule
14   that as soon as possible.
15            Let's next talk about plaintiff's motion to compel
16   certain personnel records of defendant.  So personnel
17   records contain a lot of things that aren't particularly
18   relevant to the case.  It sounds to me that what you're --
19   what plaintiff would be focused on would be things such as
20   performance evaluations or discipline, is that correct?
21            MS. ORZICK:  Yes, your Honor, as well -- and this
22   is Hilary Orzick -- that's correct, as well as any other
23   complaints of discrimination that have been filed against
24   the individual defendants that are in the personnel records
25   of the individual defendants.
```

```
1                         PROCEEDINGS              12
2              THE COURT:  Right, right.  Okay.  So let me ask
3    the plaintiff, if defendants were disciplined with
4    something other than the type of conduct complained of in
5    this case, like, for -- I don't know, I would be
6    speculating as to what it could be, but that wouldn't be
7    particularly relevant, do you agree?
8              MS. ORZICK:  Well, it could be, your Honor.  So
9    part of the issue in this case is that our client was
10   terminated, and the reason that she was given for her
11   termination was her alleged lateness.  And so to the extent
12   that there are any complaints about tardiness or lateness
13   or absences or things like that, that could actually --
14   even nondiscriminatory-based complaints could still be
15   highly relevant in this case so that we can prove disparate
16   treatment or pretext.
17             THE COURT:  Well, do you have any basis right now
18   to believe that any of these individuals were late or
19   engaged in the same type of conduct but were not
20   disciplined?
21             MS. ORZICK:  Yes, your Honor.  In fact,
22   specifically, Jose Taveras, our client made a complaint
23   that she was being treated unfairly in comparison to him.
24   Mr. Taveras was her supervisor, and she complained that he
25   was late just as often as she was; yet, she was the only
```

1                                PROCEEDINGS                    13

2   one being disciplined for such lateness.  So we do have a

3   good-faith belief that there was disparate treatment for

4   these nondiscriminatory-based complaints.  And Chris

5   Maltman, as well, is another individual defendant.

6            THE COURT:  Okay.  So why isn't Equinox, why

7   doesn't it agree to produce for these individuals

8   complaints made against them of discrimination of the sort

9   alleged by the plaintiff and their performance evaluations?

10  What's the problem with that?

11           MR. ZOLDESSY:  Your Honor, this is Jason Zoldessy

12  foe the Equinox defendants.  So there's three individual

13  defendants.  For defendants Maltman and Taveras defendants

14  have produced all documents in these files pertaining to

15  other complaints, including other complaints that have

16  nothing to do with discrimination or protected activity.

17  Any discipline issued to Taveras and Maltman had been

18  produced, as well.  There was documentation produced

19  pertaining to counseling that Mr. Taveras received about

20  time and attendance.  There is nothing else in

21  Mr. Taveras's time about time and attendance.  So we

22  believe there's absolutely -- if that's what plaintiff is

23  seeking but they just represented they are, we believe

24  everything in Maltman and Taveras's files has been

25  produced.

```
 1                          PROCEEDINGS              14
 2              Defendant Gecht, during this time period he was,
 3    you know, essentially the plaintiff's second-level
 4    supervisor.  He was a regional director who supervised
 5    Mr. Taveras, who was the general manager for plaintiff.
 6    What plaintiff really seems to be after is that plaintiff
 7    knows that there's another litigation out there involving
 8    Mr. Gecht which postdates plaintiff's employment with the
 9    company, which has nothing to do with plaintiff, which has
10    nothing to do with the club where plaintiff worked, and
11    that it seems like they're on a fishing expedition to learn
12    more about this other case out there involving Mr. Gecht.
13              THE COURT:  Is there an allegation of
14    discrimination of the same sort against Mr. Gecht?
15              MR. ZOLDESSY:  There's -- I mean, the claims are a
16    bit different.  I don't believe there's any -- the claims
17    in our case against Mr. Gecht are retaliation, that
18    essentially plaintiff is complaining that Mr. Gecht did not
19    properly respond to reports of discrimination or harassment
20    that plaintiff was lodging with the company.  I mean,
21    obviously, the internal complaints about Mr. Gecht that
22    relate to the other case, I mean, they're different and
23    they postdate the plaintiff's employment.  I mean, if there
24    was an internal complaint about retaliation by Mr. Gecht,
25    which I don't believe there is, I understand that would be
```

1                          PROCEEDINGS                    15

2   fair game.  But, I mean, there are other claims about

3   Mr. Gecht from someone totally different who has his own

4   case against the company.

5             THE COURT:  All right, I'd like to hear from --

6             MS. ORZICK:  Your Honor, if I can respond to that?

7             THE COURT:  Yes.  I mean, first, it sounds like,

8   with respect to the two, Taveras and Maltman, there's

9   nothing else that is outstanding of these types of records.

10  But let me hear what you have to say with Gecht?

11            MS. ORZICK:  Yes, your Honor.  So just to correct

12  the record, plaintiff does have allegations of

13  discrimination against Adam Gecht.  It's not solely a

14  retaliation claim against Adam Gecht.  So other complaints

15  of discrimination would therefore be relevant.

16            Also, with respect to retaliation, even if the

17  complaint is not identical to our clients, Mr. Gecht's

18  response to such a complaint, whether or not there was any

19  retaliation is relevant and subject to discovery.  The way

20  that these types of complaints are handled and the way that

21  they are responded to by Gecht and as well as by the

22  company are discoverable and highly relevant, particularly

23  with respect to proving punitive damages.  When a jury is

24  asked to review punitive damages and what is warranted,

25  they'll look to see motive, they'll look to see knowledge.

```
 1                          PROCEEDINGS                    16
 2   These are the kinds of things that can only be established
 3   if we have a clear picture of what knowledge the company
 4   had of Gecht's behavior, his history of behavior, whether
 5   or not punitive damages can be useful in curtailing future
 6   behavior.  So this, I think, is extremely relevant and
 7   subject to discovery.
 8             MR. ZOLDESSY:  Your Honor --
 9             THE COURT:  Okay, I've heard enough -- I've heard
10   enough.  I'm going to require Equinox to disclose any
11   performance assessments of Mr. Gecht as well as evidence of
12   other complaints of discrimination or retaliation made
13   against him by employees.
14             MR. SHILOH:  Your Honor, could I just make one
15   potential clarification.  Mr. Gecht worked for the company
16   for many years.  I mean, do you want the performance
17   evaluations for the, you know, 15 or so years he was there
18   need to be produced?
19             THE COURT:  No, no, I don't think 15 years is
20   necessary.  I think two or three years prior to the year
21   where the issue occurs and then a year afterwards.
22             MR. SHILOH:  And just to confirm, your Honor,
23   plaintiff worked for the company from December 2018 till
24   September 2019.  She was there -- I'm sorry -- November
25   2018.
```

```
 1                      PROCEEDINGS            17
 2              THE COURT:  So performance evaluation should be
 3    '16, '17, '18, '19, '20.  Is there '21?
 4              MR. SHILOH:  I don't believe so, but I'm not
 5    positive, your Honor.
 6              THE COURT:  All right, five years of performance
 7    evaluations.
 8              Okay, so let's move to the next item, which is the
 9    shift schedules.  So as I understand it, defendants have
10    agreed to produce shift schedules for the managers at
11    92nd Street.  Is this still an issue?
12              MR. ZOLDESSY:  It's -- your Honor, this is Jason
13    Zoldessy for defendant --
14              MS. ORZICK:  You can go ahead, Jason.
15              MR. ZOLDESSY:  I'm sorry, yeah, I didn't mean to
16    interrupt.  This is Jason Zoldessy for defendants.  I mean,
17    the only thing which has not been located, your Honor, is
18    for the three months -- I'm sorry -- the three weeks of
19    September 2019, when the plaintiff was there.  I mean, I
20    could represent that defendant's IT department has been
21    spending an enormous amount of time to try to locate these,
22    you know, as well as any other copies.  I mean, if we find
23    the last three weeks of schedules, we'll product them; but
24    at this point, everything else other than these last three
25    weeks of the plaintiff's employment has been produced to
```

```
 1                        PROCEEDINGS                    18
 2  plaintiff's counsel.
 3              THE COURT:  Okay, all right.  Now let's turn to
 4  the privilege logs.  Where are defendants on their
 5  privilege logs?
 6              MR. ZOLDESSY:  Your Honor, there are, you know, a
 7  handful of things that, you know, we had redacted that are
 8  mostly just forwards from our client or references to a
 9  lawyer's name, which have been redacted.  And I'm really
10  not aware of any other documents that have been designated
11  or that we've, you know, withheld on the basis of
12  privilege.  But, I mean, as we put in our letter, we'll
13  ensure by the end of this week plaintiff's counsel has a
14  privilege log for whatever we've withheld thus far based on
15  privilege.
16              THE COURT:  Okay.  All right.  From plaintiff's
17  perspective, are there other issues that need to be
18  addressed today?
19              MS. ORZICK:  Yes, your Honor.  Referring you to
20  issue two of our letter, we also requested complaints of
21  discrimination and retaliation against the Manhattan
22  locations of Equinox.  Again for similar reasons why
23  they're relevant with respect to the individual defendants,
24  this is a retaliation suit.  There is an abundance of case
25  law in the Second Circuit that for retaliation cases it's
```

```
1                           PROCEEDINGS              19
2   probative to learn of other complaints of discrimination to
3   see how the defendant responded to such allegations,
4   whether they were properly investigated, whether any
5   remedial action was taken.  And that is subject to
6   discovery and probative for plaintiff to show motive and
7   intent.  And so these documents have been requested by
8   plaintiff.  Defendants have yet to produce them.
9            THE COURT:  For what period of time are you
10  seeking these records for?
11           MS. ORZICK:  I would have to take another look,
12  but I think it was five years, your Honor.
13           THE COURT:  Five years meaning going back to 2016?
14           MS. ORZICK:  Right.  So from 2016 through the
15  present.
16           THE COURT:  Okay.
17           MR. ZOLDESSY:  Your Honor, if I may?
18           THE COURT:  Sure, go ahead.
19           MR. ZOLDESSY:  I mean, your Honor, this is a big
20  company.  I mean, I understand for some other cases, for
21  some other companies you have to limit it to Manhattan may
22  sound reasonable.  During the time period at issue I think
23  there's 37 different clubs that Equinox has operated in
24  Manhattan.  Some of these are quite sizable, and you have a
25  lot of employees.  And, you know, to have to search records
```

```
1                          PROCEEDINGS                    20
2   for any internal complaint filed with 37 different clubs
3   over any time period is burdensome.  And none of this
4   involves people relevant to this case.  We have --
5              THE COURT:  Well, wait a minute.  Let me stop you
6   right there.  How does complaint -- what was the complaint
7   policy?  How did people make complaints?
8              MR. ZOLDESSY:  I mean, there's a handbook with a
9   reporting procedure which provides that you can complain to
10  your supervisor or human resources if you have a complaint.
11             THE COURT:  And is there a central human resources
12  for all of the clubs in Manhattan?
13             MR. ZOLDESSY:  There's different regions that it's
14  divided up into.  I mean, for instance -- and I think those
15  have been changed over time -- the human resources director
16  testified about there being an Upper East Side region,
17  which I believe encompassed seven different clubs during
18  the time the plaintiff worked there, which was kind of that
19  region.  But I don't believe -- it's changed over time.
20  I'm not sure it was over -- I mean, there's only one human
21  resources department, but as far as different territories,
22  that's changed over the years, I know.  And the plaintiff
23  was there for nine months at one club.  And, you know, we
24  just have concerns that this is being overlitigated and
25  it's a fishing expedition.  We're right now today in the
```

1                           PROCEEDINGS                    21

2   midst of the eighth deposition that plaintiff's counsel's

3   conducted.  We've produced everything and anything having

4   to do with complaints at the 92nd Street club, which is

5   where the plaintiff worked for all but her training period,

6   when she was fired by the company.  And to have to produce

7   documents relating to 37 different clubs for any time

8   period involving -- you know, there's probably who knows

9   how many different general managers of turnover during the

10  years of 37 different clubs and how many hundreds of

11  employees, it's just burdensome, and it has nothing to do

12  with the people involved in this case.

13              THE COURT:  Well, wait a minute.  You started

14  arguing a little bit more when I had some questions about

15  how these complaints are handled.  So what I'm hearing is

16  that the Upper East Side clubs all had the same HR person

17  who would advise managers on discipline and termination of

18  employees, is that correct?

19              MR. ZOLDESSY:  That is correct.

20              THE COURT:  And was that the case in 2017, '18 and

21  '19?

22              MR. ZOLDESSY:  I believe it might have changed.

23  They might have rotated a bit during that time.  But in

24  general, my understanding is that the answer to that is

25  yes.

```
 1                          PROCEEDINGS                22
 2              THE COURT:  And the Upper East Side region is
 3  approximately seven clubs, you said?
 4              MR. ZOLDESSY:  Correct.
 5              THE COURT:  Okay.  So what I am going to require
 6  is that Equinox take a look at similar types of complaints
 7  as plaintiff; and to the extent they were made by employees
 8  of the Upper East Side region in the period 2017 through
 9  '19.  And the reason that I'm narrowing it to this is
10  because it's to the extent plaintiffs are saying that it's
11  relevant to see how the company responds, if there's one
12  human resources officer who is advising at the 92nd Street
13  location and six other locations, then there could arguably
14  be relevance to how that person was advising manager on
15  discipline, termination and response to discrimination
16  complaints.  So I'm going to require you to produce
17  complaints again of a similar type of discrimination and
18  retaliation for those -- that Upper East Side region for
19  the period 2017 through 2019.
20              Anything else from plaintiff?
21              MS. ORZICK:  No, your Honor.  Thank you.
22              THE COURT:  Anything from defendant Gecht?
23  Mr. Shiloh, anything else you want to raise?
24              MR. SHILOH:  No, Judge.  Thank you for your
25  ruling.
```

```
1                        PROCEEDINGS                23
```

2          THE COURT:  Anything else from the Equinox

3  defendants?

4          MR. ZOLDESSY:  No, your Honor.  Thank you.

5          THE COURT:  Okay.  So I would like to get a status

6  update.  Right now the schedule set by Judge Koeltl is fact

7  discovery ending August 30.  Are you all going to be able

8  to make that, or do you need a slight extension?

9          MS. ORZICK:  This is Hilary Orzick on behalf of

10  the plaintiff.  We are prepared to complete discovery by

11  the 30th.  To the extent that additional documents need to

12  be produced in accordance to your Honor's ruling, perhaps

13  your Honor can make an exception for the production of

14  those documents.  But other than that, we are prepared to

15  end on Monday.

16          MR. ZOLDESSY:  Your Honor, this is Jason Zoldessy

17  for Equinox.  I mean, we have no -- Equinox defendants have

18  no intent for any new discovery.  I would just ask that we

19  have, you know, a couple of weeks or so just to produce

20  whatever your Honor has ordered that we produce today.  But

21  other than that, you know, we believe that we're done with

22  discovery.

23          THE COURT:  Okay.  And Mister --

24          MS. ORZICK:  I'm sorry, your Honor, this is --

25  sorry, this is Hilary Orzick again.  I just realized --

1                          PROCEEDINGS                    24

2    yeah, I'm just -- to the extent that we may need to

3    redepose someone based on the production, we would just ask

4    to, you know, have a window of time to either make an

5    application or if -- or how your Honor would like to go

6    about it.  But I do want to leave the option open that to

7    the extent this new production gives us a good-faith basis

8    to redepose any of the witnesses for limited questioning

9    based on that, you know, please -- it might be good to have

10   a window or to have an open time before a summary judgment

11   deadline.

12              THE COURT:  Well, I don't know if I would permit

13   reopening depositions.  That, you know, we'd have to take a

14   look at down the road.  But what I'm going to allow, since

15   you have expert discovery deadline of 10/30/2021, I don't

16   think there's any harm in extending discovery through the

17   end of September for purposes of defendants producing these

18   additional documents that I've ordered.  And if for some

19   reason you can't get the plaintiff's remaining three hours

20   of deposition in in the next couple of days, you could take

21   that in the first two weeks of September.

22              What I'm also going to ask that you do is provide

23   me with a status letter in 30 days.  And if there's a need

24   for the Court ruling on something, you can put that in the

25   letter.  Okay?

```
 1                        PROCEEDINGS                    25

 2            MR. ZOLDESSY:  Thank you, Judge.

 3            MS. ORZICK:  Thank you, your Honor.

 4            THE COURT:  Thanks, everyone.  Have a great day.

 5   We're adjourned.

 6            (Whereupon, the matter is adjourned.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                                                26

2

3                     C E R T I F I C A T E

4

5          I, Carole Ludwig, certify that the foregoing

6    transcript of proceedings in the case of Europe v. Equinox

7    Holdings, Inc. et al, Docket #20-cv-07787-JGK-KHP, was

8    prepared using digital transcription software and is a true

9    and accurate record of the proceedings.

10

11

12                      *Carole Ludwig*

13   Signature_____

14                      Carole Ludwig

15   Date:     August 26, 2021

16

17

18

19

20

21

22

23

24

25