UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RÖBYNN EUROPE,<br><br>       *Plaintiff*,<br><br>     -against-<br><br>EQUINOX HOLDINGS, INC. d/b/a<br>EQUINOX FITNESS CLUB,<br>EQUINOX EAST 92ND STREET, INC.,<br>CHRISTOPHER MALTMAN, *individually*,<br>*and* ADAM GECHT, *individually*,<br><br>       *Defendants*. | Case No. 20-CV-07787 (JGK)(KHP) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR
<u>SANCTIONS FOR SPOLIATION OF EVIDENCE</u>**

Hilary J. Orzick<br>
Crumiller P.C.<br>
16 Court St, Ste 2500<br>
Brooklyn, NY 11241<br>
(212) 390-8480<br>
hjo@crumiller.com<br>
Attorneys for Plaintiff

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... 3

PRELIMINARY STATEMENT ............................................................................................. 4

FACTUAL BACKGROUND .................................................................................................. 5

    I.    Defendants' Notice of Their Obligation to Preserve the September 2019 Schedule ........... 5

    II.    Defendants' Fail to Produce the September 2019 Schedule ................................................ 7

    III.    Defendants Violate This Court's Order to Produce the September 2019 Schedule ............ 8

ARGUMENT ........................................................................................................................... 9

    I.    Defendants' Spoilation of Evidence is Sanctionable ........................................................... 9

        A.    Defendants Neglected Their Duty to Preserve Evidence ..................................... 10
        B.    Defendants Had a Culpable State of Mind in Their Destruction of Evidence ................. 12
        C.    The Destroyed Evidence is Critical to Assessing the Claims in this Case and its Deletion Prejudices Plaintiff .......................................................................................... 13

    II.    Sanctions Are the Appropriate Remedy to Defendants Spoliation .................................. 14

        A.    This Court Should Institute an Adverse Inference ............................................... 14
        B.    In the Alternative, This Court Should Issue a Jury Instruction that Plaintiff's Similarly Situated Coworkers' Lateness Did Not Improve in September 2019 ...................................... 16

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Arista Records v. Usenet.com, Inc.*,
   608 F. Supp. 2d 409, 433-34 (S.D.N.Y. 2009) .......................................................................... 10

*Keir v. UnumProvident Corp.*,
   No. 02 Civ. 8781 (DLC), 2003 U.S. Dist. LEXIS 14522 (S.D.N.Y. Aug. 22, 2003) ............... 11

*McDonnel Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ................................................................................................................. 14

*Passlogix, Inc. v. 2FA Tech., Inc.*,
   708 F. Supp. 2d 378, 414 (S.D.N.Y. 2010) .............................................................................. 11

*Pegasus Aviation, Inc. v. Varig Logistica S.A.*,
   26 N.Y.3d 543, 554 (2015) ....................................................................................................... 14

*PSG Poker, L.L.C. v. DeRosa-Grund*,
   No. 06 Civ. 1104 (DLC), 2008 U.S. Dist. LEXIS 4225 (S.D.N.Y. Jan. 22, 2008) ................... 11

*Residential Funding Corp. v. DeGeorge Financial Corp.*,
   306 F.3d 99, 107 (2d Cir. 2002) ..................................................................................... 9, 12, 14

*Sekisui Am. Corp. v. Hart*,
   945 F. Supp. 2d 494, 507-508 (S.D.N.Y. 2013) ....................................................................... 10

*Skyline Steel, LLC v. PilePro, LLC*,
   101 F. Supp. 3d 394, 407 (S.D.N.Y. 2015) ..................................................................... 9, 10, 13

*Treppel v. Biovail Corp.*,
   249 F.R.D. 111, 120 (S.D.N.Y. 2008) ........................................................................................ 9

*Turner v. Hudson Transit Lines, Inc.*,
   142 F.R.D. 68, 77 (S.D.N.Y. 1991) .......................................................................................... 14

*Zimmerman v. Polly Prep County Day Sch.*,
   No. 09 Civ. 4586 (FB), 2011 U.S. Dist. LEXIS 40704 (E.D.N.Y. Apr. 13, 2011) .................. 10

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) .................................. 9, 11

Plaintiff Röbynn Europe respectfully submits this memorandum of law in support of her motion for sanctions against Defendants Equinox Holdings, Inc. D/B/A Equinox Fitness Club, Equinox East 92nd Street, Inc. (collectively, "Equinox"), Christopher Maltman, and Adam Gecht (together, "Defendants").

## PRELIMINARY STATEMENT

There is no dispute that Defendants destroyed key documentary evidence, causing irreparable prejudice to Plaintiff in this litigation. Defendants discriminatorily and retaliatorily terminated Plaintiff, a former Fitness Manager of the Equinox 92nd Street Location, in September 2019 shortly after she made a protected complaint of race discrimination, and used the guise of "lateness" to hide their unlawful motivations. Plaintiff complained at the time of her termination and following her termination that Defendants discriminatorily and retaliatorily enforced its lateness policy against her and not her equally late similarly situated coworkers. However, Defendants failed to preserve the only document that records when Equinox managers were scheduled to arrive throughout September 2019, the September 2019 East 92nd Street Equinox managers' schedule (the "September 2019 Schedule"). Because of Defendants' destruction of this document, Plaintiff is severely prejudiced as she cannot compare her lateness to her similarly situated coworker's lateness for the crucial time period of September 2019.

Between June and September 24, 2019, Plaintiff, an African American woman, made multiple protected complaints to Defendants concerning her race based hostile work environment, including complaints that Equinox failed to investigate her concerns and that Defendants did not properly address her complaints of discrimination in the workplace. Plaintiff's allegations have been supported by direct evidence in discovery. By way of example only, Defendant Christopher Maltman complained to Michael Caporusso, Equinox's Regional

4

Director of Personal Training, that Plaintiff was a "not charming" "negress" because she continued to complain about his discriminatory behavior and failure to investigate her protected complaints. Also, by way of example only, Caporusso, who was aware of Maltman's discriminatory comments, failed to escalate Maltman's discrimination to Human Resources, even when he was alerted that Equinox was going to terminate Plaintiff for her alleged lateness. At the same time, Defendants declined to address chronic lateness issues with Plaintiff's similarly situated coworkers, including but not limited to an alleged wrongdoer, Jose Taveras.

Defendants cannot on one hand, assert that it lawfully terminated Plaintiff because she committed grosser lateness violations than her similarly situated coworkers, and on the other hand, destroy the only document sufficient to establish Plaintiff's arrival times and how they compare to those situated coworkers. Defendants' malfeasance substantially inhibits Plaintiff from fully meeting her burden to prove that Defendants asserted non-discriminatory reason for termination is pretextual. Accordingly, Plaintiff respectfully requests this Court invoke a negative inference against Defendants regarding the comparative lateness of other Fitness Managers, or in the alternative, instruct the jury at trial that it cannot consider evidence reflecting that any of Plaintiff's coworkers' lateness improved in September 2019.

## FACTUAL BACKGROUND

I.     **Defendants' Notice of Their Obligation to Preserve the September 2019 Schedule**

On September 24, 2019, Defendants discriminatorily and retaliatorily terminated Plaintiff's employment, pretextually citing "lateness" as the reason for her termination. Plaintiff contends that Defendants subjected her to disparate treatment by terminating her for allegedly arriving late to her scheduled shifts, while permitting her similarly situated coworkers (other

5

managers at Equinox's East 92nd Street Location) to habitually arrive to work late without consequence.

On September 24, 2019, Defendants provided Plaintiff with a written termination letter, notifying her of her termination for repeated lateness between August 3, 2019 and September 19, 2019. Plaintiff wrote on that document and handed it back to Defendants:

> This feels biased and targeted. My general manager [Jose Taveras] has been late as often as I have and other employees have been late often, without serious repercussions. It seems as though because I often call attention to issues in the club I am being targeted unfairly. A review of other managers lateness will reveal that there is bias here.

*See* Declaration of Hilary J. Orzick, Exhibit 1.[1]

Only two days later, on September 26, 2019, Plaintiff emailed Defendants' Human Resources personnel complaining of unlawful discrimination and retaliation, and asked Defendants specifically to review "the monthly management schedule, and the times [Jose Taveras] actually checked in" as part of his investigation into her complaint of unlawful retaliation. *See* Ex. 2.

On December 9, 2019, Plaintiff, through counsel, informed Defendants of another written complaint of unlawful discrimination and retaliation, stating "while numerous other staff members including GM Taveras routinely arrived after their official start times, Ms. Europe was singled out for enforcement and termination based on her numerous protected activities." Ex. 3. In this same communication, Plaintiff's counsel communicated that Plaintiff intended to initiate litigation against Defendants, alerting them to their obligation to preserve relevant documents.

On January 24, 2020, Plaintiff, through counsel, filed the prerequisite charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff

---

[1] All citations to exhibits attached to the Declaration of Hilary J. Orzick are referred herein as Ex. 1.

6

supplied the EEOC with the contact information for Equinox's in-house counsel and forwarded Defendants a courtesy copy of the charge of discrimination. Defendants subsequently engaged with the EEOC in furtherance of their efforts to defend themselves against Plaintiff's claims.

## II.     Defendants' Fail to Produce the September 2019 Schedule

On April 14, 2021, Plaintiff served her Request for the Production of Documents ("Document Requests"), which sought all documents and communications concerning the time/attendance records of several similarly situated managers employed by Equinox as well as all time/attendance records for employees during the period of Plaintiff's employment. *See* Ex. 4. Plaintiff needed this information to determine how often she and her similarly situated coworkers were late. Indeed, upon comparing this information Defendants provided (which was only for June – August 2019), Plaintiff revealed that other managers were late as often, if not more often, than she was, but were not terminated for lateness. *Id.* at Request Nos. 29-34.

On May 27, 2021, Defendants served their response to the Document Request, wherein they asserted untenable objections to each request for time/attendance records and agreed only to a scant production of one document relating to a disciplinary letter received by one manager for time/attendance issues. After meeting and conferring, Plaintiff ultimately filed a motion to compel Defendants to produce these documents.

On August 19, 2021, Plaintiff filed a letter motion to compel Defendants' production of, *inter alia*, Managers' Schedules for Equinox's 92nd Street location during Plaintiff's employment. Dkt No. 50. Four days later, on August 23, 2021, Defendants produced the manager schedules from December 2018 to August 2019. *See* Ex. 5. The September 2019 Schedule evidencing the scheduled shifts for Plaintiff and other managers for the three-week period leading up to Plaintiff's termination was omitted from this production. On August 24,

7

2021, Defendants filed their opposition to Plaintiff's motion to compel wherein they stated "[y]esterday Equinox was able to locate the schedules from May 2019-August 2019 which we promptly produced…[w]e/Equinox are continuing to work in good-faith to locate the shift scheduled for September 2019." Dkt. No. 56.

At a hearing on that motion on August 25, 2021, Defendants did not argue that the September 2019 Schedule was not relevant or discoverable; instead, they again stated Equinox was still trying to "locate" the document and would produce it "if" it is located. Dkt No. 58 at 17:15-25. Accordingly, on August 27, 2021, this Court issued a Discovery Order granting, *inter alia*, that portion of Plaintiff's motion seeking to compel Defendants' production of the September 2019 Schedule and ordering the parties to file a joint status letter to the Court by September 24, 2021 to update the Court and flag potential discovery issues. After the parties obtained a one-week extension to file their joint letter, the parties filed the letter on October 1, 2021. In the letter, Defendants requested an extension to October 29, 2021, "to continue [their] search" of the September 2019 Schedule. Plaintiff did not oppose Defendants' request but noted for the Court that if Defendants failed to preserve this highly relevant document, Plaintiff was contemplating pursuing the instant spoliation motion.

**III.   Defendants Violate This Court's Order to Produce the September 2019 Schedule**

On October 29, 2021, Defendants still had not produced the September 2019 Schedule. On November 1, 2021, Plaintiff's counsel emailed Defendants' counsel regarding the missing document. *See* Ex. 6. In his reply email, Defendants' counsel admitted that Equinox was unable to locate the September 2019 Schedule. Plaintiff's also requested Equinox provide an explanation of the steps it took to preserve relevant documents, including the September 2019 Schedule, in the fall of 2019 when it was first put on notice of potential litigation. *Id.* at p. 2.

8

Defendants' counsel did not offer an explanation, and instead explained the efforts taken to try an obtain the document that Equinox did not preserve, and evidently already destroyed. *Id.* at p. 2.

On November 15, 2021, Plaintiff filed a letter motion to request a conference seeking permission to file a motion for sanctions for spoliation of evidence. Dkt. No 66. By scheduling order dated November 18, 2021, the Court permitted Plaintiff to submit a motion for sanction but further ordered the parties to meet and confer in advance to determine whether a stipulation can resolve the dispute. The parties conferred and traded proposed language for said stipulation but were unable to agree on a stipulation.

## ARGUMENT

I. **Defendants' Spoilation of Evidence is Sanctionable**

Defendants must be sanctioned for their admitted failure to preserve the September 2019 Schedule and the resultant destruction of that relevant evidence. Sanctions for the spoliation of evidence are appropriate where (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008) (citing *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

A. <u>Defendants Neglected Their Duty to Preserve Evidence</u>

The first prong of the spoliation test requires a showing that Defendants had a duty to preserve relevant evidence. It is indisputable that Defendants were in possession of such evidence and had a duty to preserve it long before the filing of this lawsuit.

"[A] litigant has the duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 407 (S.D.N.Y. 2015) (internal marks omitted). This "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). In other words, a duty to preserve arises when "litigation was reasonably anticipated." *Id.* at 217. Litigation is reasonably anticipated, and a party is on notice of its duty to preserve, when the plaintiff threatens litigation and informs the other side of its purportedly unlawful conduct. *Skyline Steel*, 101 F. Supp. 3d at 409; *Zimmerman v. Polly Prep County Day Sch.*, No. 09 Civ. 4586 (FB), 2011 U.S. Dist. LEXIS 40704 (E.D.N.Y. Apr. 13, 2011) (duty attached when "given notice of potential pending litigation"). "If triggered, the preservation obligation requires a litigant to do more than refrain from intentionally destroying relevant evidence; the litigant must also take affirmative steps to prevent inadvertent spoliation." *Skyline Steel*, 101 F. Supp. 3d at 408 (internal citations and quotation marks omitted). Litigants must therefore "identify all sources of potentially relevant evidence and implement a litigation hold suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." *Id.; see also Sekisui Am. Corp. v. Hart*,

945 F. Supp. 2d 494, 507-508 (S.D.N.Y. 2013) (finding failure to preserve documents and instruct a vendor to do the same was "inexcusable given that Sekisui is the plaintiff in this action and, as such, had full knowledge of the possibility of future litigation"); *Arista Records v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 433-34 (S.D.N.Y. 2009) (noting an obligation to preserve images of webpages from defendant's website, which contained evidence related to accusations).

    Here, Defendants do not dispute that they maintained and controlled the September 2019 Schedule. Indeed, they have spent the past four months attempting to locate the document to cure their failure to preserve it ahead of litigation. Defendants' obligation to preserve this and other evidence arose as early as September 24, 2019, when in response to her retaliatory termination Plaintiff stated in writing that she felt she was being "targeted" and subjected to Equinox's bias. She further stated that she felt she was being treated disparately compared to her similarly situated colleagues "who have been late often, without serious repercussions." Plaintiff even noted the Manager Schedules as relevant evidence stating "[a] review of other managers lateness will reveal that there is bias here." Defendants' notice was reaffirmed just two days later when, by email, she complained of unlawful discrimination and highlighted the manger schedules as evidence critical to substantiate her claims. Defendants' obligation was certainly triggered by December 9, 2020, when they were informed of their duty to preserve by Plaintiff's counsel. If nothing else, Defendants' obligation was triggered by January 24, 2020, when they were notified of the charge of discrimination filed with the EEOC. Despite this obligation, Defendants made absolutely no effort to preserve this relevant document, nor did they make any effort to search for and produce this document, until Plaintiff filed her motion to compel towards the end of discovery in this litigation.

11

Defendants therefore ignored their obligation to take affirmative steps to prevent inadvertent spoliation when the duty to do so first arose.

B.     Defendants Had a Culpable State of Mind in Their Destruction of Evidence

Next, Defendants failed to preserve and subsequently destroyed evidence with a culpable state of mind, thus satisfying the second prong of the spoliation test. "A culpable state of mind for purposes of a spoliation includes ordinary negligence." *Zubulake*, 220 F.R.D. at 220. Indeed, "[o]nce the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Id.* at 220 (citing *Keir v. UnumProvident Corp.*, No. 02 Civ. 8781 (DLC), 2003 U.S. Dist. LEXIS 14522 (S.D.N.Y. Aug. 22, 2003) (criticizing defendant for loss of e-mails even though loss occurred "through the fault of no one")). The "failure to implement a litigation hold is, by itself, considered grossly negligent behavior" and sufficient to "satisf[y] [the] burden with respect to" culpability. *Passlogix, Inc. v. 2FA Tech., Inc.*, 708 F. Supp. 2d 378, 414 (S.D.N.Y. 2010). A party's "repeated failure to either produce relevant documents or a credible story regarding their whereabouts — despite the admonitions of [the] court and repeated requests from [the opposing party] — can only be interpreted as an intentional and willful act." *PSG Poker, L.L.C. v. DeRosa-Grund*, No. 06 Civ. 1104 (DLC), 2008 U.S. Dist. LEXIS 4225 (S.D.N.Y. Jan. 22, 2008).

Defendants took no steps to preserve this document until August 2021, nearly two years after it was on notice of its obligation to preserve it. Additionally, Defendants have refused to inform Plaintiff of what efforts, if any, were taken to preserve this relevant document. It can be inferred from Defendants' silence on this issue that they intentionally destroyed this key piece of evidence that likely weighs in Plaintiff's favor.

However, even if this Court finds that Defendants did not intentionally destroy the September 2019 Schedule, Defendants' failure to preserve relevant evidence and the subsequent

destruction of such evidence is, at best, negligent and thus, Defendants had a sufficiently culpable state of mind. As this Court has repeatedly held, ordinary negligence is sufficient to demonstrate a "culpable state of mind" for purposes of a spoliation inference. *See Residential Funding*, 306 F.3d at 108. The sole excuse Equinox has proffered for their failure to preserve relevant evidence is that the schedules in question were created and disseminated by previous general manager at Equinox, Jose Taveras (who is no longer employed by Defendants and who the Parties have been unable to locate to date).

The contention that Equinox should not be held responsible or is somehow not in control of the business records produced by their own general manager is absurd. Even if this Court entertained such an argument, it still offers no explanation as to why Equinox did not seek to preserve such records in September 2019 when Plaintiff outlined its relevance to her claims of discrimination and retaliation. If Defendants' assertion is that they were not required to preserve documents or issue a litigation hold notice at the local club where Plaintiff was employed, that is, at minimum, grossly negligent.

      C.      The Destroyed Evidence is Critical to Assessing the Claims in this Case and its <u>Deletion Prejudices Plaintiff</u>

Finally, there can be no question that the destroyed September 2019 Schedule evidencing the alleged lateness of Plaintiff and her similarly situated colleagues, in the weeks leading up to her termination for lateness is relevant to the elements of Plaintiff's claims as well as Defendants' affirmative defenses.

Where deletion of evidence is willful, courts will presume its relevance. *See Skyline Steel*, 101 F. Supp. 3d at 411. As discussed above, given Defendants' silence on its efforts to preserve this document, this Court should presume that the deletion of this evidence was willful and thus should presume its relevance.

13

In the alternative, where the failure to preserve and destruction of documents is negligent, "a court may, but is not required to, presume the relevance of the evidence." *Id.* In that case, courts can also look for "extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party." *Id.* Such evidence exists in the instant matter. Specifically, the previously produced schedules and check in sheets show that similarly situated coworkers were as late if not later than Plaintiff. *See* Ex. 5. By way of example only, Taveras was late to 82.02% of his shifts in 2019. *Id.* Taveras was then given a warning for his excessive lateness, but in the month following his warning, his lateness actually got worse: he arrived late on 95.45% of his shifts. *Id.* He was not penalized for his increasingly frequent lateness. *Id.* In contrast, Europe was terminated when her lateness was similar that of Taveras (Europe was late 77% of scheduled shifts, whereas Taveras was late to 75.7% of scheduled shifts). *Id.* These circumstances strongly suggest that this evidence is relevant and unfavorable and, therefore, Defendants' spoliation only works to its benefit. Even if Defendants' spoliation is only found to be negligent, the evidence establishes that the deleted materials are relevant and their destruction is prejudicial to Plaintiff. Therefore, the September 2019 Schedule is critical to Plaintiff's ability – or lack thereof – to establish that pretext in the form of disparate treatment of other managers who were as late, or later, at the time she was terminated for lateness.

## II.     Sanctions Are the Appropriate Remedy to Defendants Spoliation

### A.     This Court Should Institute an Adverse Inference

An adverse inference instruction to the jury regarding the evidence destroyed by Defendants' spoliation is appropriate to address the remedial and deterrent goals of sanctions. "In order to remedy the evidentiary imbalance created by the destruction of evidence, an adverse inference may be appropriate even in the absence of a showing that the spoliator acted in bad

faith." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991). "The adverse inference provides the necessary mechanism for restoring the evidentiary balance." *Id.* at 75. Imposition of an adverse inference instruction may be appropriate even when the destruction of evidence is found to be negligent. *See Residential Funding Corp.*, 306 F.3d at 108 (sanction of an adverse inference "should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little different to the party victimized by the destruction of evidence whether that act was done willfully or negligently"); *Pegasus Aviation, Inc. v. Varig Logistica S.A.*, 26 N.Y.3d 543, 554 (2015) (holding adverse inference charge appropriate even where evidence negligently destroyed).

      Throughout this litigation, Defendants have maintained that Plaintiff was terminated because of alleged lateness through September 2019, and her termination was not motivated by unlawful discrimination and/or retaliation. It will be Plaintiff's burden to prove that Defendants' alleged nondiscriminatory basis for the termination is pretextual. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the time of her termination, and throughout this litigation, Plaintiff has made clear her intention to demonstrate that pretext by demonstrating that similarly situated managers who were also repeatedly late, but did not make protected complaints, were not terminated or treated the same as Plaintiff. Plaintiff's ability to do that has been irreparably harmed by Defendants' spoliation. Because Defendant failed to preserve relevant documents, they are now on much stronger footing to argue their alleged nondiscriminatory basis for termination. At this juncture, an adverse inference is the only way to remedy the imbalance caused by Defendants' spoliation.

B.    In the Alternative, This Court Should Issue a Jury Instruction that Plaintiff's Similarly Situated Coworkers' Lateness Did Not Improve in September 2019

Should this Court not find that an adverse inference is the appropriate remedy, Plaintiff respectfully requests that this Court issue a jury instruction at trial precluding the jury from finding that Plaintiff's similarly situated coworkers' lateness did not improve in September 2019. Defendants' destruction of the September 2019 data should not benefit Defendants, and Defendants should not be permitted to argue that the absence of this documentary evidence suggests that Plaintiff's similarly situated managers' lateness improved during September 2019. Therefore, at the very least, Plaintiff requests that the jury be instructed that:

1. The September 2019 Manager Schedule was destroyed by Equinox;

2. As a result, the Parties may use other documents and testimony produced in discovery to infer the work schedules of Taveras, Maltman, Ahluwalia, LeMasters, Harrison, Chism, Anta, and De Leon in September 2019; You may consider Taveras, Maltman, Ahluwalia, LeMasters, Harrison, Chism, Anta, and De Leon as having the same rate of lateness (i.e. number of instances they arrived late to a shift and/or how late they were for each shift) for September 2019 as December 2018 - August 2019, OR, you may infer that Taveras, Maltman, Ahluwalia, LeMasters, Harrison, Chism, Anta, De Leon increased their rate of lateness; and

3. In the absence of documentary evidence or testimony, you are not to infer that Taveras, Maltman, Ahluwalia, LeMasters, Harrison, Chism, Anta, or De Leon's lateness improved in September 2019.

## CONCLUSION

For the aforementioned reasons, it is respectfully submitted that this Court grant Plaintiff's motion in its entirety.