**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBYNN EUROPE,

Plaintiff,

-against-

EQUINOX HOLDINGS, INC. d/b/a EQUINOX FITNESS CLUB, EQUINOX EAST 92ND STREET, INC., JOSE TAVERAS, *individually*, CHRISTOPHER MALTMAN, *individually*, and ADAM GECHT, *individually*,

Defendants.

Case No.: 1:20-cv-07787 (JGK) (KHP)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Jason A. Zoldessy, Esq.
Gregory S. Slotnick, Esq.

*Attorneys for Defendants Equinox Holdings, Inc., Equinox East 92nd Street, Inc., and Christopher Maltman*

LEWIS BRISBOIS BISGAARD & SMITH LLP
77 Water Street, 21st Floor
New York, New York 10005
(212) 232-1300

Elior D. Shiloh, Esq.
Stephanie M. Steinberg, Esq.

*Attorneys for Defendant Adam Gecht*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii - vi

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

A. Equinox Background ........ 2

B. Plaintiff's Equinox Employment ........ 2

C. Plaintiff's Job Performance, Discipline, and Employment Separation ........ 3

D. Plaintiff's Allegations Concerning Maltman ........ 4

E. Plaintiff's Allegations Against Gecht ........ 5

F. Plaintiff's Additional Complaints ........ 6

LEGAL STANDARD FOR SUMMARY JUDGMENT ........ 7

ARGUMENT ........ 7

I. PLAINTIFF'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED. ........ 7

A. Plaintiff Cannot Establish Her Claims of Race, Sex, or Disability Discrimination Under Title VII, §1981, the NYSHRL, or the ADA. ........ 7

1. Plaintiff Did Not Suffer An Adverse Action Prior to September 2019. ........ 8

2. Plaintiff Cannot Establish Her Employment Was Terminated Under Circumstances Giving Rise to An Inference of Discrimination. ........ 9

3. Plaintiff's Failure to Adhere to Equinox's Attendance and Punctuality Policy Constitutes a Legitimate Non-Discriminatory Reason for Terminating Her Employment. ........ 10

4. Plaintiff Cannot Show Pretext. ........ 10

B. Plaintiff's NYCHRL Race, Sex, and Disability Discrimination Claims Fail. ........ 11

II. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED. ........ 12

A. Plaintiff's Hostile Work Environment Claims Under Title VII, §1981, and the NYSHRL Should Be Dismissed. ........ 12

B. Plaintiff's Hostile Work Environment Claims Under the NYCHRL also Should Be Dismissed. ........ 15

III. PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED. ........ 16

A. Plaintiff Cannot Establish "But For" Causation. ........ 17

B. Plaintiff Cannot Establish Equinox's Legitimate Reasons for Terminating Her Employment Are Pretextual. ........ 19

IV. PLAINTIFF'S AIDING AND ABETTING CLAIMS FAIL BECAUSE PLAINTIFF CANNOT MAKE OUT A *PRIMA FACIE* CASE OF DISCRIMINATION AGAINST EQUINOX. ........ 20

V. PLAINTIFF'S CLAIMS FOR INDIVIDUAL LIABILITY FAIL AS A MATTER OF LAW. ........ 20

A. Plaintiff's ADA Claims Against Gecht and Maltman Fail. ........ 20

B. Plaintiff's NYSHRL and NYCHRL Claims Against Gecht Fail Because Plaintiff Cannot Connect Any Discriminatory or Retaliatory Conduct to Gecht. ........ 21

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Agosto v. N.Y.C. Dep't of Educ.,
982 F.3d 86 (2d Cir. 2020) .... 12

Alexander v. Westbury Union Free Sch. Dist.,
829 F. Supp. 2d 89 (E.D.N.Y. Nov. 4, 2011) .... 20

Alfano v. Costello,
294 F.3d 365 (2d Cir. 2002) .... 12

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .... 7

Barney v. H.E.L.P. Homeless Serv. Corp.,
No. 19 Civ. 5959 (KPF), 2021 U.S. Dist. LEXIS 178813 (S.D.N.Y. Sep. 20, 2021) .... 14, 15

Bennett v. Watson Wyatt & Co.,
136 F. Supp. 2d 236 (S.D.N.Y. 2001) .... 10

Blanco v. Brogan,
620 F. Supp. 2d 546 (S.D.N.Y. 2009) .... 16

Bowen-Hooks v. City of N.Y.,
13 F. Supp. 3d 179 (E.D.N.Y. 2014) .... 17

Brown v. American Golf Corp.,
99 F. App'x 341 (2d Cir. 2004) .... 8

Brown v. City of Syracuse,
673 F. 3d 141 (2d Cir. 2012) .... 8

Chukwueze v. NYCERS (N.Y. City Emples. Ret. Sys.),
10-CV-08133 (JMF), 2014 U.S. Dist. LEXIS 101908 (S.D.N.Y. July 25, 2014) .... 18

Clark County Sch. Dist. v. Breeden,
532 U.S. 268 (2001) .... 13

Coddington v. Adelphi Univ.,
45 F. Supp.2d 211 (E.D.N.Y. 1999) .... 20

Cruz v. Coach Stores, Inc.,
202 F.3d 560 (2d Cir. 2000) .... 13

Davis v. New York City Dep't of Educ.,
2012 U.S. Dist. LEXIS 5633 (E.D.N.Y. Jan. 18, 2012) ....................8

DeLuca v. Sirius XM Radio, Inc.,
No. 12-cv-8239 (CM), 2017 U.S. Dist. LEXIS 127278 (S.D.N.Y. Aug. 7, 2017) ....................15

Desir v. Bd. of Coop. Educ. Servs. (BOCES),
803 F. Supp. 2d 168 (E.D.N.Y. 2011) ....................9

Dickens v. Hudson Sheraton Corp., LLC,
167 F. Supp. 3d 499 (S.D.N.Y. Mar. 1, 2016) ....................14

Durant v. New York City Hous. Auth.,
2013 U.S. Dist. LEXIS 45946 (E.D.N.Y. 2013) ....................20

El Sayed v. Hilton Hotels Corp.,
627 F.3d 931 (2d Cir. 2010) ....................19

Fenner v. News Corp.,
2013 U.S. Dist. LEXIS 170187 (S.D.N.Y. Dec. 2, 2013) ....................15

Golove v. Monroe Cmty. Coll.,
29 F. App'x 695 (2d Cir. 2002) ....................9

Graves v. Deutsche Bank Sec., Inc.,
548 F App'x 654 (2d Cir. 2013) ....................19

Green v. New York City Transit Auth.,
15-CV-8204 (ALC), 2020 U.S. Dist. LEXIS 172519 (S.D.N.Y. Sep. 21, 2020) ....................8, 9

Griffin v. Dirva Inc.,
835 F.3d 283 (2d. Cir. 2016) ....................21

Guity v. Uniondale Union Free Sch. Dist.,
2017 U.S. Dist. LEXIS 27542 (E.D.N.Y. Feb. 23, 2017) ....................12

Harris v. Forklift Sys., Inc.,
510 U.S. 17 (1993) ....................12

Holleman v. Art Crating, Inc.,
No. 12 Civ. 2719 (VMS), 2014 U.S. Dist. LEXIS 139916 (E.D.N.Y. Sept. 30, 2014) ....................19

Kalola v. IBM,
No. 13 Civ. 7339 (VB), 2017 U.S. Dist. LEXIS 29945 (S.D.N.Y. Feb. 28, 2017) ....................18

Kellman v. Metro. Transp. Auth.,
8 F. Supp. 3d 351 (S.D.N.Y. 2014) ....................21

Kennedy v. Fed. Express Corp.,
No. 5:13 Civ. 1540, 2016 U.S. Dist. LEXIS 133146 (N.D.N.Y. Sep. 28, 2016) ....................19

Kulak v. City of New York,
88 F.3d 63 (2d Cir. 1996)....................7

Littlejohn v. City of New York,
795 F.3d 297 (2d Cir. 2015)....................12

Lugo v. City of N.Y.,
518 F. App'x 28 (2d Cir. 2013) ....................11

Malena v. Victoria's Secret Direct, LLC,
886 F. Supp. 2d 349 (S.D.N.Y. 2012)....................22

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1985)....................7

McLee v. Chrysler Corp.,
109 F.3d 130,135 (2d Cir. 1997)....................10

Meiri v. Dacon,
759 F.2d 989 (2d Cir. 1985)....................8

Moccio v. Cornell Univ.,
889 F. Supp. 2d 539 (S.D.N.Y. 2012)....................11, 12

Nokaj v. North East Dental Mgmt., LLC,
2019 U.S. Dist. LEXIS 24396, 2019 WL 634656 (S.D.N.Y. 2019)....................21

Parks Real Estate Purchasing Grp. V. St. Paul Fire & Marine Ins. Co.,
472 F.3d 33 (2d Cir. 2006)....................7

Perry v. Ethan Allen, Inc.,
115 F.3d 143 (2d Cir. 1997)....................12

Petrisch v. HSBC Bank USA, Inc.,
No. 07-CV-3303 (KAM)(JMA), 2013 U.S. Dist. LEXIS 45346 (E.D.N.Y. Mar. 28, 2013)....................16

R.B. Ventures, Ltd. v. Shane,
112 F.3d 54 (2d Cir. 1997)....................7

Ramirez v. Michael Cetta Inc.,
No. 19 Civ. 986 (VEC), 2020 U.S. Dist. LEXIS 180619 (S.D.N.Y. Sept. 30, 2020) ....16

Ramsaran v. Booz & Co. (N.A.) Inc.,
2015 U.S. Dist. LEXIS 111770 (S.D.N.Y. Aug. 23, 2015) ....10

Reichman v. City of New York,
117 N.Y.S.3d 280 (App. Div. 2d Dep't, 2020) ....16

Sanderson v. Leg Apparel, LLC,
No. 19 Civ. 8423 (GHW), 2020 U.S. Dist. LEXIS 234190 (S.D.N.Y. Dec. 14, 2020) ....12

Schanfield v. Sojitz Corp. of Am.,
663 F. Supp. 2d 305 (S.D.N.Y. 2009) ....22

Schwapp v. Town of Avon,
118 F.3d 106 (2d Cir. 1997) ....13, 14

Smith v. New Venture Gear, Inc.
No. 5:00-CV-1151, 2008 U.S. Dist. LEXIS 4468 (N.D.N.Y. Jan. 22, 2008) ....8

Spiegel v. Schulmann,
604 F.3d 72 (2d Cir. 2010) ....20

St. Juste v. Metro Plus Health Plan,
8 F. Supp. 3d 287 (E.D.N.Y. 2014) ....18

Stinson v. City Univ. of NY,
No. 17-CV-3949 (KBF), 2018 U.S. Dist. LEXIS 95300 (S.D.N.Y. June 6, 2018) ....8

Tolbert v. Smith,
790 F.3d 427 (2d Cir. 2015) ....13

Tomka v. Seiler Corp.,
66 F.3d 1295 (2d Cir. 1995) ....21

Villar v. City of New York,
135 F. Supp. 3d 105 (S.D.N.Y. 2015) ....22

Williams v. N.Y.C. Hous. Auth.,
61 A.D.3d 62 (1st Dep't 2009) ....11, 16

Yeger v. Inst. of Culinary Educ., Inc.,
2017 U.S. Dist. LEXIS 10753 (S.D.N.Y. Jan. 25, 2017) ....10, 11

## PRELIMINARY STATEMENT

Defendants Equinox Holdings, Inc. ("Equinox"), Equinox East 92nd Street, Inc., Christopher Maltman ("Maltman"), and Adam Gecht ("Gecht") (collectively, "Defendants") submit this Memorandum of Law in support of their motion for an Order granting summary judgment and dismissing the Complaint of Robynn Europe ("Plaintiff") in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 56. Plaintiff filed this action asserting claims of race, sex, and disability discrimination and hostile work environment, as well as retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981 ("§1981"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Americans with Disabilities Act ("ADA").

The undisputed evidence demonstrates that Plaintiff's relatively short period of employment (approximately 10 months) with Equinox was fraught with an abysmal time/attendance record and progressive discipline which led to her separation. Plaintiff's retaliation claims fail as Plaintiff's disciplinary record with Equinox began before her alleged protected activity and the protected activity is not connected in any way to the reasons for Plaintiff's documented discipline or her eventual separation. Moreover, the alleged protected activity resulted in a thorough investigation and appropriate disciplinary actions being taken against responsible employees. Plaintiff's discrimination claims should be dismissed as Plaintiff has produced no evidence to refute that she was terminated for legitimate, non-discriminatory business reasons. Plaintiff's hostile work environment claims also should be dismissed because even if her version of the facts is credited, the conduct complained of is the exact sort of petty slights and trivial inconveniences that are not actionable under the law.

## STATEMENT OF FACTS

### A. Equinox Background

Equinox is a luxury lifestyle brand that operates more than 100 full-service fitness clubs. The club relevant to this matter is located at East 92nd Street in Manhattan. (Rule 56.1 Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("SOMF") ¶16). Equinox maintains an Employee Handbook containing policies which prohibit discrimination or harassment based on membership in any protected classification as defined by federal, state, and local laws. (Id. ¶2). Equinox conducts annual anti-discrimination training for all of its employees and grants reasonable accommodations to employees with disabilities. (Id. ¶¶3-4). Equinox also maintains a policy on Attendance and Punctuality. (Id. ¶7). Plaintiff received, acknowledged, and read the Employee Handbook at the start of her employment, understood she was supposed to contact Equinox's People Services Department (Equinox's name for Human Resources) if she believed that she was subjected to discrimination or retaliation, and understood the Attendance and Punctuality policy meant that failure to arrive at work as scheduled could lead to termination. (Id. ¶¶5-6, 8).

### B. Plaintiff's Equinox Employment

Plaintiff's lateness issues developed prior to working at Equinox. She did not arrive to work on time at her prior employment and was late to both of her job interviews with Equinox. (Id. ¶¶10-12). Notwithstanding Plaintiff's lateness to the second interview, Regional Director of Personal Training Michael Caporusso (who did not know at the time that Plaintiff had been late to an earlier interview and denied a position) conveyed a job offer to Plaintiff, who was given the title of Fitness Manager while training for about a month at Equinox's East 61st Street club. (Id. ¶¶13-14). Plaintiff transferred to Equinox's East 92nd Street club as a Personal Training Manager in December 2018, where she was supervised by Defendant Jose Taveras ("Taveras"), the club's

General Manager. (Id. ¶¶16, 18). Personal Training Managers supervise Fitness Managers, and Plaintiff supervised the personal trainers at the club, including Maltman, a Fitness Manager. (Id. ¶¶17, 19-20). Plaintiff admitted that she had a professional, cordial working relationship with Maltman. (Id. ¶23).

### C. Plaintiff's Job Performance, Discipline, and Employment Separation

Plaintiff consistently struggled with punctuality; to wit, Plaintiff testified that she arrived to work more than 10 minutes late 25 to 50 times and thus deserved to be disciplined. (Id. ¶¶39, 41). There were also times when Plaintiff was more than an hour late for work. (Id. ¶42).

Taveras informally counseled Plaintiff on her lateness issues before she ever received a written Record of Discussion ("ROD") warning. (Id. ¶44). Plaintiff's first ROD was issued in April 2019 and noted that she was late to work 9 times in 15 days, 6 of which were by an hour or more; Plaintiff noted in the ROD she understood her punctuality had to improve. (Id. ¶¶45-46). Plaintiff continued to arrive for work late after receiving the April ROD and on May 29, 2019, Taveras sent an e-mail to Regional Director of People Services Stephanie Herrmann ("Herrmann"), Regional Personal Training Manager Rob Avellan ("Avellan"), and copied Regional Director Gecht about Plaintiff's continued pattern of lateness. (Id. ¶¶47-48). A decision was reached to further discipline Plaintiff and she was issued a second ROD and final warning in June 2019, in which she again acknowledged that she had to improve. (Id. ¶¶49-50). The June ROD noted that Plaintiff was late to work 14 times during the month of May 2019. (Id. ¶51). Critically, Plaintiff never reached out to People Services about either of the aforementioned RODs. (Id. ¶52).

In addition to the time and attendance issues, Equinox received complaints from employees and managers regarding interactions they had with Plaintiff, and lost trainers and clients because of Plaintiff. (Id. ¶¶36-37). Moreover, Plaintiff arrived late for at least two personal training

forums that she was supposed to lead and missed another personal training forum in its entirety. (Id. ¶43).

Upon Plaintiff's request, Equinox accommodated her by modifying her work schedule during the summer of 2019 to assist her with getting to work on time; however, Plaintiff still arrived late for work 15 times in August 2019 and 9 times in September 2019. (Id. ¶¶53-54). Avellan found it highly problematic to employ a Personal Training Manager who was routinely late for work, and Taveras recommended Plaintiff's termination to Gecht and People Services. (Id. ¶¶55-57). Following Taveras's termination recommendation, People Services reviewed Plaintiff's prior RODs and approved the decision to terminate Plaintiff's employment. (Id. ¶58). Plaintiff thereafter received a Record of Involuntary Separation ("ROIS") in September 2019 stating that she was being terminated because of time and attendance deficiencies. People Services supported the decision to terminate Plaintiff's employment; indeed, Equinox has terminated other managers for time and attendance issues. (Id. ¶¶59-61). After Plaintiff's termination, she brought up concerns about Taveras's attendance, and People Services looked into such concerns. (Id. ¶97). In fact, Equinox terminated Taveras's employment in mid-2020 as part of a restructuring, and Taveras's disciplinary history including time and attendance issues contributed to the decision. (Id. ¶¶66-67).

**D. Plaintiff's Allegations Concerning Maltman**

Plaintiff's Complaint suggests that Maltman was fixated on and spoke inappropriately about black women. However, when the allegations are parsed out there is no evidence to support them. For instance, while Plaintiff did not like the fact that Maltman wanted to ask out a black woman who worked in a coffee shop that Plaintiff believed was too young for Maltman, Maltman never made any reference to the woman's race, nor did Maltman ever direct any harassing, discriminatory, or retaliatory conduct towards Plaintiff personally. (Id. ¶¶22, 24-

25). Plaintiff was responsible for reporting complaints she received about Maltman and she never told People Services, her supervisor, or Gecht about her thoughts about Maltman or the coffee shop incident. (Id. ¶¶26-27). Plaintiff also never escalated that Maltman commented inappropriately about the appearance of a member. (Id. ¶28). Indeed, Plaintiff's only complaints center around Maltman being inappropriate towards Personal Trainer Sabrina McGeary ("McGeary"). Plaintiff reported that Maltman (i) said she looked like another woman, (ii) commented on her leggings, and (iii) asked her if she was autistic; Plaintiff advised People Services about the comments Maltman made to McGeary and in turn Maltman was counseled by Gecht and disciplined with an ROD for his comments, which had nothing whatsoever to do with race. (Id. ¶¶29-31). Plaintiff never witnessed Maltman act inappropriately towards McGeary thereafter. (Id. ¶84).

Plaintiff also never escalated Maltman's alleged comments to Martin M. Melendez. (Id. ¶85). Additionally, Marcell Harrison ("Harrison") identifies as black and worked as the Personal Training Manager at the East 92nd Street club prior to Plaintiff. She supervised Maltman during that time and did not note any difference between how Maltman treated white employees and employees of color. (Id. ¶¶86-89). No one at Equinox ever communicated to Harrison that they observed Maltman treat people differently based on race, she never observed or formed an opinion that Maltman was sexually and/or romantically fixated on black women, and she never observed Maltman make any inappropriate comments. (Id. ¶¶90-92).

**E. Plaintiff's Allegations Against Gecht**

Despite her allegations, Plaintiff admitted that she had a cordial and professional relationship with Gecht. She felt she could come to him as a resource and that he gave good professional advice. (Id. ¶33). Gecht was present at the meeting in which Maltman made the "autistic" comment to McGeary. Gecht found it inappropriate and reprimanded Maltman. (Id.

¶34). Plaintiff never complained to Gecht that she was being discriminated against based on sex, race, or disability. (Id. ¶70). She also never reported any alleged discriminatory behavior by Maltman to Gecht. (Id. ¶71). Regarding Plaintiff's other complaints, Gecht conscientiously addressed each issue and disciplined the appropriate parties. Plaintiff admits that Gecht disciplined Taveras and Faermann for improperly handling the "white trainer" incident. (Id. ¶80). Furthermore, Gecht did in fact counsel Taveras for his own time and attendance issues (Id. ¶64). Unlike Plaintiff, Taveras' attendance improved after he was disciplined. (Id. ¶65).

**F. Plaintiff's Additional Complaints**

Plaintiff admitted that her requests for accommodations related to disability were always granted by People Services and she found Herrmann to be responsive to her needs. (Id. ¶¶21, 72, 94). Plaintiff also admits she never complained about being treated unfairly during her employment other than her comments in the June ROD and that she never complained to People Services about sex or race discrimination. (Id. ¶¶73, 82).

Plaintiff claims her protected activity to People Services was when she alerted People Services to a purported client request for a white trainer. (Id. ¶74). Notably, Plaintiff already had received the April ROD prior to engaging in this alleged protected activity. (Id. ¶75). People Services investigated and addressed the concerns raised by Plaintiff. (Id. ¶¶79-80).

According to People Services, due to differences in the roles and responsibilities, there are different expectations of a General Manager coming to work by a time certain versus a Personal Training Manager coming to work by a time certain, and General Managers have the discretion to determine at what time and when it is essential for them to be at the business. (Id. ¶¶ 62-63).

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997) (internal citations omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (requiring factual issue be both material and genuine). To establish a genuine issue of material fact, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1985). Rather, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial." Parks Real Estate Purchasing Grp. V. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, … conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted).

## ARGUMENT

### I. PLAINTIFF'S DISCRIMINATION CLAIMS SHOULD BE DISMISSED.

#### A. Plaintiff Cannot Establish Her Claims of Race, Sex, or Disability Discrimination Under Title VII, §1981, the NYSHRL, or the ADA.

To establish a prima facie case of discrimination under Title VII, §1981, the NYSHRL, and the ADA, Plaintiff must show she was in a protected class; was qualified for the position; suffered an adverse action; and the adverse action occurred under circumstances giving rise to an inference of discrimination. See Green v. New York City Transit Auth., 15-CV-8204 (ALC), 2020 U.S. Dist. LEXIS 172519, at *32-33 (S.D.N.Y. Sep. 21, 2020). Plaintiff cannot rely

on "purely conclusory allegations" and must offer "concrete particulars" to make the requisite showing. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). "Once a plaintiff establishes a prima facie case of [] discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment. Finally, if the employer provides such a reason, then the burden shifts back to the employee to prove that discrimination was the real reason for the employment action." Green, 2020 U.S. Dist. LEXIS 172519, at *32. "Discrimination claims under [the NYSHRL] are evaluated by the same standard as Title VII and section 1981 claims." Smith v. New Venture Gear, Inc. No. 5:00-CV-1151, 2008 U.S. Dist. LEXIS 4468, at *69-70 (N.D.N.Y. Jan. 22, 2008) (internal citations and quotations marks omitted). Moreover, "[] discrimination claims under the ADA and the NYSHRL are also evaluated under the McDonnell Douglas standard." Stinson v. City Univ. of NY, No. 17-CV-3949 (KBF), 2018 U.S. Dist. LEXIS 95300, at *19 (S.D.N.Y. June 6, 2018).

1. Plaintiff Did Not Suffer An Adverse Action Prior to September 2019.

A plaintiff sustains an adverse employment action when she "endure[s] a materially adverse change in the terms and conditions of employment." Brown v. City of Syracuse, 673 F. 3d 141, 150 (2d Cir. 2012). While Equinox's termination of Plaintiff's employment was adverse, the alleged acts that Plaintiff complains of prior to her termination are not. See Brown v. American Golf Corp., 99 F. App'x 341, 343 (2d Cir. 2004) (performance improvement plan not adverse); Davis v. New York City Dep't of Educ., 2012 U.S. Dist. LEXIS 5633, at *22 (E.D.N.Y. Jan. 18, 2012) (negative evaluations not adverse). As Plaintiff did not suffer an adverse action prior to September 2019, she cannot establish an inference of discrimination exists based on alleged comments or actions occurring prior to that date and her speculative belief that Taveras condoned or compounded discrimination based on the alleged comments and actions of Maltman. Moreover, the only allegedly discriminatory action Plaintiff actually complained about (the aforementioned

"white trainer" incident) in or around June 2019 was thoroughly investigated and addressed. (SOMF ¶¶ 76-80).

2. Plaintiff Cannot Establish Her Employment Was Terminated Under Circumstances Giving Rise to An Inference of Discrimination.

There is no direct or circumstantial evidence that Plaintiff's discharge was motivated in any way by race, sex, or disability. The basis of Plaintiff's discrimination claims are that (1) stray, innocuous comments allegedly made by Maltman (Plaintiff's subordinate) toward McGeary that were not directed at Plaintiff or race-based, are evidence that she was discriminated against based on her race and sex (SOMF ¶ 22), and (2) her pure speculation that Maltman and Taveras resented Plaintiff for seeking disability-related accommodations, which Plaintiff admits Equinox granted (Id. ¶94), are evidence of disability discrimination. The comments which Plaintiff alleges in her Complaint and attributes to Maltman pertaining to the appearance of certain Black women, Martin Melendez and a transgender woman, even if credited constitute stray workplace remarks which, in the absence of a clearly demonstrated nexus to an adverse action, cannot defeat summary judgment. See Golove v. Monroe Cmty. Coll., 29 F. App'x 695, 699 (2d Cir. 2002). Plaintiff admits that none of Maltman's purported race or sex-based comments were directed at her. Maltman was a subordinate employee; Equinox did not take direction from or consult with Maltman in connection with the decision to discipline and/or terminate Plaintiff. Additionally, Plaintiff's speculative belief that Maltman and Taveras "resented" her following her accommodation requests does not give rise to an inference of discrimination. See Desir v. Bd. of Coop. Educ. Servs. (BOCES), 803 F. Supp. 2d 168, 179 (E.D.N.Y. 2011) (holding that a "subjectively held belief that comments are discriminatory is insufficient to support an inference of discrimination."). "[A]nti-discrimination laws are not a way to enforce a civility code" and the alleged conduct at issue here is precisely the sort of conduct courts reject as insufficient to establish

discrimination as a matter of law. See Yeger v. Inst. of. Culinary Educ., Inc., 2017 U.S. Dist. LEXIS 10753 at *26, 40-42 (S.D.N.Y. Jan. 25, 2017).

3. Plaintiff's Failure to Adhere to Equinox's Attendance and Punctuality Policy Constitutes a Legitimate Non-Discriminatory Reason for Terminating Her Employment.

It is undisputed that Equinox issued Plaintiff multiple warnings regarding her violations of Equinox's time and attendance policy. (SOMF ¶¶44-46, 49-51). As Plaintiff's deficiencies persisted throughout the months after the issuance of her June 2019 final ROD warning (Id. ¶54), Equinox terminated her employment. (Id. ¶59). This constitutes a legitimate, non-discriminatory reason for terminating plaintiff. See Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001); see also McLee v. Chrysler Corp., 109 F.3d 130,135 (2d Cir. 1997).

Plaintiff does not dispute her lateness issues. (SOMF ¶¶41, 45, 50). Courts do not sit as "super-personnel departments" to reexamine a company's business decisions or assess whether a plaintiff's performance was deficient. Ramsaran v. Booz & Co. (N.A.) Inc., 2015 U.S. Dist. LEXIS 111770, at *26 (S.D.N.Y. Aug. 23, 2015) (holding the question is not whether the employer reached a correct conclusion, but whether it made a good faith business decision). Here, the undisputed evidence supports Equinox's legitimate reason for terminating Plaintiff's employment due to its belief that her time/attendance was deficient.

4. Plaintiff Cannot Show Pretext.

Equinox did not have faith in Plaintiff's ability to arrive on time for her scheduled shifts, which Plaintiff understood that she was required to do or risk termination. (SOMF ¶8). Plaintiff cannot present a scintilla of evidence that the stated reason for her termination was pretext for unlawful discrimination. Notably, with respect to her disability discrimination claims, Plaintiff testified that Equinox engaged in the interactive process and granted each of Plaintiff's workplace

accommodations requests. (SOMF ¶94). Thus, Plaintiff's Title VII, §1981, NYSHRL and ADA discrimination claims should be dismissed.

**B. Plaintiff's NYCHRL Race, Sex, and Disability Discrimination Claims Fail.**

"The NYCHRL requires a separate and independent analysis from any federal and state law claims and is construed broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Yeger, 2017 U.S. Dist. LEXIS 10753, at *33. At the summary judgment phase, a defendant must show that "no jury could find defendant liable under any of the evidentiary routs: under the McDonnell Douglas test, or as one of a number of mixed motives, by direct or circumstantial evidence." Id. Plaintiff has failed to state a prima facie claim of discrimination, but even if she could, she cannot succeed on satisfying her ultimate burden of showing pretext. Under the NYCHRL, Plaintiff can defeat summary judgment only by establishing she was treated "less well" **because of** her race, sex, or disability. See Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 78 (1st Dep't 2009). However, courts "still require[] some evidence from which discrimination can be inferred." Lugo v. City of N.Y., 518 F. App'x 28, 30 (2d Cir. 2013).

Here, Plaintiff's claims should be dismissed as she has not and cannot produce any evidence she was treated less well, or that her employment was terminated, **because of** her race, sex, or disability. See Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 574 (S.D.N.Y. 2012) (granting summary judgment). Equinox maintains an extremely diverse workforce and Plaintiff was the same race and sex at termination as when she was hired and promoted. Additionally, Harrison was another black woman who also supervised Maltman and denied ever observing Maltman make any inappropriate comments. (SOMF ¶¶86-93). Harrison was promoted, remains employed by Equinox and at her deposition did not corroborate any of Plaintiff's claims of discrimination.

It is irrefutable that Plaintiff had a poor attendance record and that she was

counseled on this troubling behavior at length prior to her termination. Plaintiff has failed to put forth any evidence in support of her discrimination claims, and therefore, like the plaintiff in Moccio, Plaintiff's NYCHRL claims fail as mere speculation is insufficient to state a viable claim. 889 F. Supp. 2d 539, 575 (S.D.N.Y. 2012).

## II. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED.

### A. Plaintiff's Hostile Work Environment Claims Under Title VII, §1981, and the NYSHRL Should Be Dismissed.

Under Title VII, §1981, and the NYSHRL[1], in order to prevail on a hostile work environment claim, Plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Littlejohn v. City of New York, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The misconduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim also must subjectively perceive that environment to be abusive.[2] Harris, 510 U.S. 17, 21 (1993). Incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). Isolated acts, unless very serious, do not meet the threshold. Alfano v. Costello, 294 F.3d 365, 380 (2d Cir. 2002); Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 102 (2d Cir. 2020). In short, a plaintiff "must demonstrate either that a single incident was

---

[1] Though the NYSHRL was amended effective in October 2019 to remove the "severe or pervasive" requirement for hostile work environment claims, courts in this District have held that the amendments are not retroactive. See Sanderson v. Leg Apparel, LLC, No. 19 Civ. 8423 (GHW), 2020 U.S. Dist. LEXIS 234190, at *12, n.4 (S.D.N.Y. Dec. 14, 2020).

[2] Hostile work environment claims under Title VII, § 1981, and the NYSHRL are analyzed under the same legal standard. Guity v. Uniondale Union Free Sch. Dist., 2017 U.S. Dist. LEXIS 27542, *55, n.14 (E.D.N.Y. Feb. 23, 2017).

extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d at 149). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775 (1998)).

When the alleged wrongful conduct is discriminatory comments or slurs, courts have held that "there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." See Schwapp v. Town of Avon, 118 F.3d 106, 110-111 (2d Cir. 1997); Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015).

For example, in Philip v. GTECH Corp., the plaintiff attempted to establish the existence of a hostile work environment by alleging that defendant called another employee a "lazy nigger," and made racist statements such as "I cannot deal with these niggers," and "because niggers are monkeys, something of that aspect." 2016 U.S. Dist. LEXIS 94777, *74 (S.D.N.Y. July 20, 2016). The Court found that although any use of racial slurs is unjustifiable, such isolated, sporadic, and de-personalized epithets are not "severe and pervasive enough to create an objectively hostile or abusive work environment." See id. The Court emphasized that plaintiff's hostile work environment claim was undermined by the fact that plaintiff was never personally addressed using a racial slur. Id. Similarly, in Stembridge v. City of New York, the Court granted summary judgment to the employer on an employee's hostile work environment claim even though the factual record demonstrated that other employees had referred to the plaintiff as an "uppity nigger" and a "boy," and called African-American youths "animals." 88 F. Supp. 2d 276, 279-80,

286. (S.D.N.Y. March 29, 2000). Like the plaintiffs in Philip and Stembridge, Plaintiff's conclusory assertion that Maltman (a subordinate employee who reported to her) created a hostile work environment is insufficient to establish a viable claim because any purportedly hostile conduct was not directed at her and occurred on an isolated basis. (SOMF ¶22).

Isolated remarks such as those alleged by Plaintiff in this case cannot create a hostile work environment. In Mendez-Nouel v. Gucci Am., Inc., the Court found that comments "to the effect that, 'You know what, I know you're gay inside. You are so gay. You just don't know it'" were insufficient to state a hostile work environment. No. 10 Civ. 3388 (PAE), 2012 U.S. Dist. LEXIS 160530, at *33 (S.D.N.Y. Nov. 8, 2012). Plaintiff fails to establish that any allegedly hostile comments or conduct occurred on anything more than an isolated basis, if at all. See Barney v. H.E.L.P. Homeless Serv. Corp., No. 19 Civ. 5959 (KPF), 2021 U.S. Dist. LEXIS 178813, at *27 (S.D.N.Y. Sep. 20, 2021) (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69). Indeed, Plaintiff does not allege that any of the individually named defendants engaged in conduct that could be considered "a steady barrage" of hostile comments or conduct. See Schwapp v. Town of Avon, 118 F.3d 106, 110-111 (2d Cir. 1997); Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 517 (S.D.N.Y. Mar. 1, 2016). Plaintiff also fails to indicate the purported conduct "unreasonably interfered with her work performance" and does not "point to any evidence [Maltman's] isolated comments prevented [her] from completing [her] assignments." Barney, 2021 U.S. Dist. LEXIS 178813, at *29 (internal citations omitted).

Moreover, while Defendants anticipate Plaintiff will argue that Taveras engaged in increased scrutiny after her alleged protected activity in June 2019 (which Defendants deny), "the Second Circuit has found that 'intense scrutiny' by a supervisor, even where accompanied by

'derogatory language' and 'attempts to create a paper trail,' does not amount to a hostile work environment." Barney, 2021 U.S. Dist. LEXIS 178813, at *35-36 (internal citations omitted).

Plaintiff's allegations regarding allegedly hostile conduct and comments made by Maltman and her conclusory contention that they were permitted and exacerbated by Defendants are insufficient as a matter of law to establish the existence of a hostile work environment.

**B. Plaintiff's Hostile Work Environment Claims Under the NYCHRL also Should Be Dismissed.**

The NYCHRL does not differentiate between discrimination and hostile work environment claims and analyzes both under the same provisions of the NYCHRL, which require a plaintiff show she was treated less well than other employees because of her race, sex, or disability. See Fenner v. News Corp., 2013 U.S. Dist. LEXIS 170187, at *38, n.2 (S.D.N.Y. Dec. 2, 2013).

Plaintiff has not identified any similarly situated individuals who were treated more favorably than she was in connection with any employment action. Plaintiff claims that Taveras and Maltman also had poor attendance records. On the one hand, Equinox and Gecht dispute that Taveras was similarly situated. On the other hand, even if this claim is credited, it is insufficient to establish a viable claim of disparate treatment because Taveras was terminated less than one year later and his attendance was a factor. Moreover, the record reflects that Maltman was disciplined for other performance-based reasons.

The NYCHRL "is not intended to operate as a 'general civility code,' and the law recognizes 'an affirmative defense whereby defendants can still avoid liability if they proved the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" DeLuca v. Sirius XM Radio, Inc., No. 12-cv-8239 (CM), 2017 U.S. Dist. LEXIS 127278, at *54-55 (S.D.N.Y. Aug. 7, 2017), quoting

Williams, 61 A.D. 3d at 80 (App. Div. 1st Dep't, Jan. 27, 2009). "[W]here a plaintiff fails to demonstrate that the defendant's conduct was caused 'at least in part by discriminatory or retaliatory motive,' or the defendant demonstrates that the alleged conduct did not exceed 'petty slights or trivial inconveniences,' plaintiff's claim must fail." Ramirez v. Michael Cetta Inc., No. 19 Civ. 986 (VEC), 2020 U.S. Dist. LEXIS 180619, at *55 (S.D.N.Y. Sept. 30, 2020) (quoting Mihalik, 715 F.3d at 113). Unlike the plaintiff in DeLuca, Plaintiff admits she was never called any demeaning names or subjected to slurs. (SOMF ¶22).

There is no evidence to support Plaintiff's claim that Equinox tolerated similar chronic performance deficiencies by any employee of a different race, sex, or disability status. Plaintiff was chronically late to work and twenty-four (24) of those lateness occurred between her final ROD in June 2019 and her termination. (SOMF ¶54). Summary judgment is appropriate where the plaintiff can point to "little or no evidence" in support of her claim that she was subjected to unequal treatment because of her membership in a protected class. Petrisch v. HSBC Bank USA, Inc., No. 07-CV-3303 (KAM)(JMA), 2013 U.S. Dist. LEXIS 45346, at *55-56 (E.D.N.Y. Mar. 28, 2013) (granting summary judgment). As a result, Plaintiff's NYCHRL hostile work environment claim should be dismissed.

## III. PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED.

The essential elements of a retaliation claim under Title VII, §1981, the NYSHRL, the NYCHRL and the ADA are the same -- the plaintiff engaged in protected activity, the plaintiff's employer was aware that the plaintiff participated in the protected activity, and that there is a causal connection between the protected activity and alleged retaliatory conduct. See Blanco v. Brogan, 620 F. Supp. 2d 546, 553 (S.D.N.Y. 2009); see also Reichman v. City of New York, 117 N.Y.S.3d 280, 286 (App. Div. 2d Dep't, 2020). Although under the NYCHRL an employer's actions need to be "reasonably likely to deter a person from engaging in protected activity" (see

N.Y.C. Admin. Code § 8-107(7)) as opposed to "materially adverse," Plaintiff still cannot meet this lower threshold because she is unable to show that her purported "protected activity" is connected in any way to her progressive discipline, up to and including her termination.

If the plaintiff establishes a prima facie case, a presumption of retaliation arises, and the employer must articulate a legitimate, non-retaliatory reason for the action taken. See Bowen-Hooks v. City of N.Y., 13 F. Supp. 3d 179, 220-21 (E.D.N.Y. 2014). Once articulated, the presumption of retaliation dissipates, and the burden shifts back to the plaintiff, who must show **but for** her protected activity, she would not have suffered the adverse action. See id. (citing Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013)).

Here, even if Plaintiff could establish a prima facie case of retaliation, her claims should be dismissed because Equinox had legitimate, non-retaliatory reasons for terminating her employment.

**A. Plaintiff Cannot Establish "But For" Causation.**

The first concerns that Plaintiff ever raised that could constitute protected activity were those relating to the "white trainer" incident in June 2019. Equinox and Gecht were supportive of the concerns that Plaintiff raised and disciplined those involved, including Taveras. The April 2019 ROD for time and attendance pre-dated these concerns. Plaintiff – unsolicited – acknowledged in the April ROD that "lateness is an issue" and that she "understood" she needed to be on time going forward. (SOMF ¶45). Furthermore, while the June 2019 ROD was issued shortly after Plaintiff raised the concerns, Taveras sent an e-mail to People Services and others in late May 2019 noting Plaintiff's failure to improve since the April ROD and the June ROD was in the works prior to the date Equinix was put on notice of the "white trainer" incident. (Id. ¶48). The June ROD and the specific dates, scheduled start times, and actual check-in times identified in the September ROIS demonstrate Plaintiff's chronic and consistent time and attendance issues

continued following her final written warning. (Id. ¶¶50, 54).

Plaintiff's termination did not occur until approximately three months after the June 2019 concerns raised by Plaintiff and there is no evidence of any causal connection. To the extent that Plaintiff is claiming that her written comments on the June 2019 ROD are protected activity, this claim is without merit. Plaintiff's comments made no reference to race, gender or any other protected classification and thus are not actionable as a matter of law. Though a complaint "may be informal, they cannot be so vague or 'generalized' that the employer could not 'reasonably have understood[] that the plaintiff's complaint was directed at conduct prohibited by Title VII." St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 323 (E.D.N.Y. 2014), quoting Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011) (alteration and citation omitted); see also Chukwueze v. NYCERS (N.Y. City Emples. Ret. Sys.), 10-CV-08133 (JMF), 2014 U.S. Dist. LEXIS 101908 at *19-20 (S.D.N.Y. July 25, 2014) (a complaint in "general terms" during a meeting "does not establish that Plaintiff complained, let alone in clear enough terms, about unfair treatment[.]").

Accordingly, given the timing of events Plaintiff cannot establish "but for" causation and no reasonable juror could find in favor of Plaintiff's retaliation claim as a matter of law. See Kalola v. IBM, No. 13 Civ. 7339 (VB)(LMS), 2017 U.S. Dist. LEXIS 29945, at *41 (S.D.N.Y. Feb. 28, 2017), adopted by, 2017 U.S. Dist. LEXIS 123398 (S.D.N.Y. Aug. 3, 2017) (dismissing retaliation claims). Equinox had legitimate, non-retaliatory reasons for issuing Plaintiff each of her disciplinary warnings and subsequently separating her employment. Plaintiff cannot defeat summary judgment based on her speculation and attempts to use the laws as a sword rather than a shield.

### B. Plaintiff Cannot Establish Equinox's Legitimate Reasons for Terminating Her Employment Are Pretextual.

Plaintiff must come forward with some evidence of pretext to raise a triable issue of fact. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). Plaintiff's speculative beliefs and personal dissatisfaction with Equinox's assessment of her performance, which she acknowledged, are insufficient as to establish pretext. See Kennedy v. Fed. Express Corp., No. 5:13 Civ. 1540 (MAD/ATB), 2016 U.S. Dist. LEXIS 133146, at *87 (N.D.N.Y. Sep. 28, 2016) (dismissing retaliation claims noting employer promptly and thoroughly addressed concerns, even when plaintiff disagreed with results); aff'd, 2017 U.S. App. LEXIS 19617 (2d Cir. Oct. 5, 2017) (affirming dismissal of retaliation claim); Holleman v. Art Crating, Inc., No. 12 Civ. 2719 (VMS), 2014 U.S. Dist. LEXIS 139916, at *169-170 (E.D.N.Y. Sept. 30, 2014) (holding that when an employee presents nothing more than rank speculation that she was subjected to retaliation, dismissal, even under the NYCHRL, is appropriate).

Plaintiff has not identified any evidence of retaliatory animus. Equinox investigated each of the concerns Plaintiff raised during her employment. (SOMF ¶¶31, 79-80). These concerns had nothing to do with the recommendation and decision to terminate her employment. People Services made a well-reasoned decision to terminate Plaintiff's employment after reviewing Plaintiff's attendance record. (SOMF ¶¶57-61).

After being advised of the termination decision, Plaintiff subsequently wrote comments on the ROIS suggesting bias and that she was unfairly targeted. Even if these comments are deemed to be protected activity, as they occurred after Plaintiff already was terminated there can be no causal connection between these comments and Plaintiff's earlier termination. See Graves v. Deutsche Bank Sec., Inc., 548 F App'x 654, 656 (2d Cir. 2013).

Accordingly, Plaintiff has failed to produce evidence of pretext and her retaliation

claims should be dismissed in their entirety.

## IV. PLAINTIFF'S AIDING AND ABETTING CLAIMS FAIL BECAUSE PLAINTIFF CANNOT MAKE OUT A *PRIMA FACIE* CASE OF DISCRIMINATION AGAINST EQUINOX.

An employee cannot be found liable as an aider and abettor of his employer's alleged discriminatory conduct if the employer is not liable. See Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 115 (E.D.N.Y. Nov. 4, 2011). Therefore, in order to establish that Maltman or Gecht aided or abetted, Plaintiff must first establish that Equinox violated the law. As Plaintiff fails to set forth a prima facie case, let alone meet her burden of demonstrating that Equinox's legitimate nondiscriminatory and nonretaliatory reasons for her termination were pretextual, Plaintiff's aiding and abetting claims against Maltman and Gecht must be dismissed.

## V. PLAINTIFF'S CLAIMS FOR INDIVIDUAL LIABILITY FAIL AS A MATTER OF LAW.

Even assuming, *arguendo,* that Plaintiff did make out a prima facie case of discrimination and retaliation, which the Defendants vehemently deny, Plaintiff's claims for individual liability still fail as a matter of law and must be dismissed.

### A. Plaintiff's ADA Claims Against Gecht and Maltman Fail.

Because the statutory definition of employers under Title VII is the same under the ADA, see 42 U.S.C. § 12111(5), "Courts within the Second Circuit have consistently held that there is no individual liability for employment discrimination under the ADA either." Coddington v. Adelphi Univ., 45 F. Supp.2d 211, 214 (E.D.N.Y. 1999). An individual defendant may not be held personally liable under the ADA. Durant v. New York City Hous. Auth., 2013 U.S. Dist. LEXIS 45946 at *10 (E.D.N.Y. 2013). This extends to ADA retaliation claims as well. See Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010) . Therefore, Plaintiff improperly alleges claims under the ADA, and such claims of individual liability must be dismissed.

**B. Plaintiff's NYSHRL and NYCHRL Claims Against Gecht Fail Because Plaintiff Cannot Connect Any Discriminatory or Retaliatory Conduct to Gecht.**

Even if the Court does not dismiss the aiding and abetting claims, Plaintiff's claims of individual liability under the NYSHRL and NYCHRL still fail as against Gecht, as Plaintiff has not shown any discriminatory or retaliatory animus or behavior by Gecht. Plaintiff has not set forth any evidence whatsoever of discriminatory conduct by Gecht, and Plaintiff admits that she never reported any alleged discrimination by others to Gecht.

Where an alleged aider and abettor is an individual employee of the corporate employer, the NYSHRL requires that the "alleged aider and abettor 'actually participated in the conduct giving rise to the claim of discrimination', and that the 'aider and abettor share the intent or purpose of the principal actor.'" Griffin v. Dirva Inc., 835 F.3d 283, 293 (2d. Cir. 2016) (internal citations and quotations omitted); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995).

Alternatively, "[a] supervisor's failure to take adequate remedial measures in response to a complaint of discrimination has been deemed 'actual participation' under the NYSHRL." Nokaj v. North East Dental Mgmt., LLC, 2019 U.S. Dist. LEXIS 24396, *19, 2019 WL 634656 (S.D.N.Y. 2019); citing Parra v. City of White Plains, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014); see also Kellman v. Metro. Transp. Auth., 8 F. Supp. 3d 351, 393 (S.D.N.Y. 2014) ("Liability may extend to supervisors who failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct." (internal quotation marks omitted)).

While the NYCHRL "provides a broader basis for direct individual liability than the NYSHRL because it applies to employees regardless of ownership or decision making power… Actual participation in conduct giving rise to a discrimination claim is required to support liability

under both the NYSHRL and NYCHRL." Villar v. City of New York, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015); see also Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012).

The same standards apply to retaliation under the NYSHRL and NYCHRL, where individual liability is also limited to cases where "an individual defendant… 'actually participates in the conduct giving rise to' the plaintiff's [discrimination or] retaliation claim." Malena, supra at 366, citing Hozer v. Pratt Indus. (USA), No. 10 Civ. 3874 (TLM), 2012 U.S. Dist. LEXIS 78811, at *2 n.1 (E.D.N.Y. June 6, 2012) (retaliation) (internal quotation marks and citation omitted); see also Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (NYCHRL discrimination). However, where the plaintiff "fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme the defendant may not be held liable." Nokai, supra, citing Aiola v. Malverne Union Free Sch. Dist., 115 F. Supp. 3d 321, 337 (E.D.N.Y. 2015).

In the case at bar, Plaintiff has failed to plead any facts at all that would suggest Gecht displayed any intent to discriminate or was involved in any alleged discrimination. To the contrary, Plaintiff described her relationship with Gecht as "professional" and testified that Gecht was "a good resource to go to with regards to navigating [her] position within the club." (SOMF ¶33). She admitted that she never complained to Gecht that she was being discriminated against based on sex, race, or disability. (Id. ¶33). Plaintiff admitted that she never reported any alleged discriminatory behavior by Maltman to Gecht. (Id. ¶70). Plaintiff also admitted that she did not notify Gecht of her disability. (Id. ¶95), and, in any event, Equinox granted her accommodation request. (Id. ¶21). Similarly, Plaintiff cannot establish that Gecht failed to take adequate remedial measures in response to her complaints of discrimination.

Nevertheless, even in regard to the amorphous "complaints" that Plaintiff sets forth, which either were not discriminatory or were not actually directed toward her, the record establishes that Gecht conscientiously addressed each issue and disciplined the appropriate parties. As stated above, Gecht addressed the "white trainer" incident, Maltman's comments to McGeary and Taveras's lateness. Thus, as Plaintiff has failed to allege any facts that could suggest discriminatory intent by Gecht, Plaintiff's NYSHRL and NYCHRL claims against Gecht must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order granting their Motion for Summary Judgment.

**CERTIFICATION OF COMPLIANCE**

Pursuant to Rule II(D) of the Individual Practices of Judge John G. Koeltl, dated July 23, 2021, I hereby certify that the Memorandum of Law submitted herein, excluding the Cover Page, Certification of Compliance, Table of Contents and Table of Authorities, is 6,987 words, including footnotes, and that it is otherwise compliant with the Court's applicable formatting rules.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue
New York, New York 10017
(212) 545-4000

By: ______________________________
Jason A. Zoldessy
Gregory S. Slotnick

ATTORNEYS FOR DEFENDANTS EQUINOX HOLDINGS, INC., EQUINOX EAST 92ND STREET, INC. and CHRISTOPHER MALTMAN

LEWIS BRISBOIS BISGAARD & SMITH LLP
77 Water Street, 21st Floor
New York, New York 10005
(212) 232-1300

Elior D. Shiloh
Stephanie M. Steinberg

ATTORNEYS FOR DEFENDANT ADAM GECHT

Dated: December 17, 2021
New York, New York

4885-1027-0215, v. 3