UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/21/2022
```

ROBYNN EUROPE,

                Plaintiff,

-against-

EQUINOX HOLDINGS, INC. d/b/a
EQUINOX FITNESS CLUB,
EQUINOX EAST 92ND STREET, INC.,
JOSE TAVERAS, *individually,*
CHRISTOPHER MALTMAN, *individually,*
*and* ADAM GECHT, *individually,*

                Defendants.

**OPINION AND ORDER ON SANCTIONS FOR SPOLIATION OF EVIDENCE**

20-CV-7787 (JGK)(KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Robynn Europe has moved for sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure because of Defendants' Equinox Holdings, Inc. d/b/a/ Equinox Fitness Club, Equinox East 92nd Street, Inc. ("Equinox"), Jose Taveras ("Taveras"), Christopher Maltman ("Maltman"), and Adam Gecht ("Gecht") (together, "Defendants") alleged spoliation of evidence, namely the September 2019 East 92nd Street Equinox managers' schedule (the "September 2019 Schedule"). (Pl. Motion, ECF No. 77.) Plaintiff seeks an adverse inference against Defendants, or in the alternative evidentiary preclusions and jury instructions, as a remedy for what Plaintiff characterizes as "Defendants destr[uction] [of] key documentary evidence, causing irreparable prejudice to Plaintiff." (Pl. Memo. of Law p. 4, ECF No. 77-1.) For the following reasons, Plaintiff's motion is GRANTED in part and DENIED in part.

1

## BACKGROUND

### A. The Litigation

On September 22, 2020, Europe filed this action asserting claims of race, sex, and disability discrimination and hostile work environment, as well as retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the New York State Human Rights Law, the New York City Human Rights Law, and the Americans with Disabilities Act.

Europe was employed by Equinox as a fitness manager at the Equinox 92nd Street location from November 2018 until September 24, 2019. (Compl., ECF No. 1.) Taveras, Maltman, and Gecht were also employed by Equinox during this time period; Taveras as a general manager, Maltman as a fitness manager, and Gecht as a regional director. (*Id*. ¶¶ 7.)

Plaintiff alleges that while she was working at Equinox, between June 2019 through September 24, 2019, she made multiple complaints to Defendants that she was being subjected to a racially hostile environment, but that Defendants did not properly investigate or address these complaints. Instead, she alleges that Equinox retaliated against her for complaining by issuing two written disciplinary notices for poor "attendance and punctuality" in April and June 2019, and firing her on September 24, 2019 for the same reason. (Compl. ¶¶ 41, 56.) She contends her poor attendance was a pretext for retaliation because other managers, including Taveras, has similarly poor attendance and punctuality but were not disciplined or fired for it.

Equinox denies these allegations. (Defs. Opp. to Motion, ECF No. 85.) Instead, it contends it legitimately terminated Plaintiff for lateness and points to her termination notice showing she was late for work on nine (9) occasions in approximately three weeks during September 2019 as well as fifteen (15) out of twenty-two (22) scheduled shifts in August 2019,

after twice being warned to improve her attendance and punctuality.  *Id.* at 1.  Equinox also states that Taveras was in fact counseled on his attendance and ultimately terminated at least in part for it, and at the time of Plaintiff's termination, Taveras's attendance issues were not so severe as to warrant further discipline.  It also contends Taveras was not similarly situated to Plaintiff because he was in a different position with different performance expectations.

After receiving her written termination letter on September 24, 2019, Plaintiff responded in writing that:

> This [firing] feels biased and targeted.  My general manager [Jose Taveras] has been late as often as I have and other employees have been late often, without serious repercussions.  It seems as though because I often call attention to issues in the club.  I am being targeted unfairly.  A review of other managers lateness will reveal that there is bias here.

*Id.* at 5.  Two days later, on September 26, 2019, Plaintiff emailed Equinox's Human Resources personnel complaining of unlawful discrimination and retaliation, and asked Defendants to specifically review "the monthly management schedule, and the times [Jose Taveras] actually checked in." *Id.* at 6.  Equinox's Human Resources responded by thanking her for expressing her concerns.  (Compl. ¶ 63.)

On December 9, 2019, Plaintiff, through counsel, informed Defendants that she had legal claims against them for unlawful discrimination and retaliation, thereby putting them on notice to preserve relevant documents.  *Id.* at 6.  On January 24, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Id.*  On September 16, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.  (Compl. ¶9.)  This suit followed.

### B. The Alleged Spoliation

Plaintiff served her Request for Production of Documents on April 14, 2021, which sought, inter alia, "all documents and communications concerning the time/attendance records of several similarly situated managers employed by Equinox as well as all time/attendance records for employees during the period of Plaintiff's employment." (Decl. of Hilary Orzick, Ex. 4, ECF No. 77-6.)

Equinox creates monthly manager schedules that provide the daily shift schedules, including the start and end times, for each Equinox manager at the East 92nd Street location. It maintains separate records of managers' daily check-in times, which can be matched against the schedules to ascertain whether a manager was late or absent on a particular day to the extent a manager timely checked in (although Plaintiff says managers did not always check in and out or timely check in or out). On August 19, 2021, Plaintiff filed a letter motion to compel Defendants' production of the manager schedules for her location during her employment. (Pl. Motion to Compel, ECF No. 55.) On August 23, 2021, Equinox produced the manager schedules from December 2018 through August 2019, but failed to produce the September 2019 Schedule, the month in which Plaintiff was terminated. (Pl. Memo. of Law, pp. 7-8.) The next day, on August 24, 2021, Defendants filed a letter explaining that the schedules are maintained at the club level and that after significant efforts to locate the schedules, they located some but not all the schedules and were still looking.

Ultimately, Defendants produced the "check-in records" for all East 92nd Street managers during the time period at issue (December 2018 – September 2019), as well as the shift schedules for such managers from December 2018 through August 2019. *Id.* Defendants

4

never located the September 2019 schedule.  Defendants assert that the check-in records for managers present a more accurate representation of a manager's arrival time than the monthly schedules and that because manager schedules did not change significantly from month-to-month, the schedule for September can be gleaned from the check-in times and prior schedules sufficient to ascertain whether others were late to work on any days in September 2019.  *Id.*

Plaintiff argues that Defendants should be sanctioned for spoliation because they were on notice of the relevance of the schedules and failed to take reasonable steps to preserve them, prejudicing her ability to make out her case that other managers were as late as she was but were not disciplined or terminated.  The month of September 2019 is particularly important because that was the month in which Plaintiff was terminated.

## DISCUSSION

### A. Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007)).  "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case-basis."  *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted).

Under Rule 37(e), if electronically stored information ("ESI") that should have been preserved in anticipation of litigation is lost due to a failure to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Since 2015 when the Rule was amended, a Court may not rely on its inherent authority or state law to determine when corrective measures for spoliation of ESI are appropriate. 2015 Advisory Notes to Rule 37(e). Importantly, the Rule does not apply when information is lost before a duty to preserve arose. *Id.* Further, the Rule applies only if the information was lost because a party failed to take reasonable steps to preserve it. *Id.*

The Rule does not specify which party bears the burden on the issue of prejudice. Rather, it gives the court discretions to determine prejudice based on the particular facts before it. Upon a finding of prejudice, the Court is tasked with determining the "least harsh sanction that can provide an adequate remedy." *Dorchester Financial Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014); *see also* 2015 Advisory Notes to Rule 37(e). The Advisory Notes are also clear that a Court is not required "to adopt measures to cure every possible prejudicial effect." 2015 Advisory Notes to Rule 37(e). Rather, "the severity of given measures must be calibrated in terms of their effect on the particular case." *Id.* The Court has broad discretion to fashion appropriate corrective measures. They may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or

giving the jury instructions to assist in its evaluation of such evidence or argument." *Id.*; *see also Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60 (S.D.N.Y. 2020).

However, the Court must be careful not to impose any measures taken to cure spoliation under subsection (e)(1) that has the effect of the sanctions specified under subsection (e)(2) of the Rule, which are reserved for those cases where there is a finding of "intent to deprive." *Id.; see also Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018).

To the extent Plaintiff cites caselaw pre-dating the 2015 amendments to Rule 37 to argue that the most severe sanctions under subsection (e)(2) can be imposed based on a finding of negligence or gross negligence, her reliance is misplaced. Amended Rule 37 rejects that negligently destroying ESI satisfies the culpable state of mind that warrants "severe spoliation sanctions[.]" *World Trade Ctrs. Ass'n v. Port Auth. Of N.Y. & N.J.*, 2018 WL 1989616, at *10 (S.D.N.Y. Apr. 2, 2018), *report and recommendation adopted*, 2018 WL 1989556; *see also* 2015 Advisory Notes to Rule 37(e).

A party seeking sanctions under subsection (e)(2) bears the burden to show by clear and convincing evidence that the alleged spoliator acted with the intent to deprive the movant of the information for use in the litigation. *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019); *Lokai Holdings*, 2018 WL 1512055, at *8. Intent can be inferred when a party has significantly failed in its obligation to preserve and collect documents. *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2021 WL 1172265, at *6 (S.D.N.Y. Mar. 29, 2021) (citing *Ottoson v. SMBC Leasing & Fin, Inc.*, 268 F. Supp. 3d 570, 582-84 (S.D.N.Y. 2017)). It also can be inferred when the "data loss [cannot] be 'credibly explained' other than by bad faith." *CBF Industria de*

7

*Gusa S/A v. AMCI Holdings, Inc.*, 2021 WL 4190628, at *18 (S.D.N.Y. Aug. 18, 2021) (citing *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017)).  However, "the intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Leidig v. Buzzfeed Inc.*, 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017).

### B. Whether the September 2019 Schedule Existed and Was Lost

As a threshold matter, "a party seeking spoliation sanctions must necessarily show that the evidence at issue actually existed," since "spoliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been lost." *La Belle v. Barclays Capital Inc.*, 2022 WL 121065, at *6 (S.D.N.Y. Jan. 13, 2022).  "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."  2015 Advisory Notes to Rule 37(e).

Here, the September 2019 Schedule clearly existed, since Defendants acknowledged that the schedules were prepared monthly and kept by Equinox and the schedules from May 2019 through August 2019 were produced.  And, since Defendants acknowledge they could not locate the September schedule after substantial efforts, the September 2019 Schedule must be presumed lost.  While the existing evidence may enable the parties to come to a close approximation of the schedule, Plaintiff argues that the check-in times themselves are not a reliable basis to ascertain lateness because managers did not always check in immediately upon arrival at work or even check out.  Thus, there is no substitute for the schedule.  At best, the schedule and other managers' lateness as compared to Plaintiff's lateness in September 2019

8

can be inferred through an examination of prior months' schedules, check-in times in September, and testimony.

    C. **When did the Duty to Preserve Arise?**

"Identifying the boundaries of the duty to preserve [evidence] involves two related inquiries: when does the duty to preserve attach, and what evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (emphasis omitted). "The obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd.*, 247 F.3d at 436. "For the purposes of Rule 37(e), 'relevance' means relevance for purposes of discovery, which is 'an extremely broad concept.'" *Cruz v. G-Star Inc.*, 2019 WL 4805765, at *11 (S.D.N.Y. Sept. 30, 2019) (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010)). "[A] litigant has the duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Skyline Steel, LLC v. PilePro, LLC,* 101 F. Supp. 3d 394, 407 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

    Here, Defendants were on notice that litigation could ensue by December 9, 2019, when Plaintiff, through counsel, explicitly informed Defendants that she intended to initiate litigation. *Ottoson*, 268 F. Supp. 3d at 581 ("The Plaintiff had control over the evidence and an obligation to preserve it [beginning from] the date that her counsel sent over a demand letter to Defendants threatening litigation and requesting Plaintiff's personnel file.") They also were on notice that the schedules were relevant at that time. Schedules are a basic record that relate to

9

time and attendance—the allegedly legitimate business reason for terminating Plaintiff's employment. And, Plaintiff herself pointed Human Resources to the schedules in September 2019 when she complained about her termination. Further, the manner in which Defendant ascertained Plaintiff was repeatedly late to work when deciding to terminate her employment included reference to the schedules. That is, it is only by comparing check-in times to the schedules that Equinox was able to determine whether Plaintiff was late on a given day because managers do not clock in and out in the same way hourly employees do. Thus, Defendants' argument that they did not realize that the schedules were something that needed to be preserved when litigation was first threatened is simply not credible.[1] *Skyline Steel, LLC*, 101 F. Supp. 3d at 408 (the duty to preserve evidence is not limited to evidence the parties specifically discuss, but instead to "all sources of potentially relevant evidence").

To the extent Defendants argue that "there is not even any evidence that the September Schedule existed [in December 2019]" is unpersuasive. Defendants concede schedules were prepared monthly, have not stated when the September2019 Schedule disappeared, and do not point to a document retention policy showing that the document would have been deleted before December 2019 pursuant to policy. Indeed, that Equinox was able to locate and produce earlier months' schedules well after December 2019 and that Human Resources committed to evaluate Plaintiff's September 2019 complaint which explicitly referenced the schedule supports the conclusion that the September schedule was available and likely

---

[1] It is too cute by half for Defendants to argue that the schedules did not serve an "official" purpose. The schedules were created by a manager to advise staff of the days and times they were expected at work. Equinox used these schedules when determining whether Plaintiff or others arrived late or were absent. Thus, they were created and maintained for a specific business purpose.

referenced by Human Resources in the month following Plaintiff's termination. It is likely the schedule was retrieved from Taveras (who created it and was still employed in December 2019) and emailed to management and Human Resources. Thus, the schedule was likely available from several sources in December 2019.

Once the duty to preserve is triggered, "the preservation obligation requires a litigant to do more than refrain from intentionally destroying relevant evidence; the litigant must also 'take affirmative steps to prevent inadvertent spoliation.'" *Skyline Steel, LLC*, 101 F. Supp. 3d at 408 (quoting *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010)). These steps include "identify[ing] all sources of potentially relevant evidence and implement[ing] a 'litigation hold' suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." *Skyline Steel, LLC*, 101 F. Supp. 3d at 408 (quoting *R.F.M.A.S., Inc.*, 271 F.R.D. at 24). Plaintiff, as the party seeking sanctions, must show that Defendants did not "take reasonable steps to preserve" the September 2019 Schedule. *Moody*, 271 F. Supp. 3d at 426. "Where a party fails to timely institute 'a formal litigation hold and . . . otherwise informally preserve ESI,' the Court can conclude that it did not undertake reasonable steps to preserve ESI." *Charlestown Cap. Advisors*, 337 F.R.D. at 61 (quoting *Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*, 2019 WL 5694256, at *10 (E.D.N.Y. July 22, 2019)).

While Plaintiff does not provide evidence as to when Defendants issued a litigation hold, Defendants essentially concede that no steps were taken to preserve the schedules in December 2019 insofar as they argue that they weren't aware of the relevance or need to

preserve the schedules until after the Plaintiff requested them in discovery.  Thus, the Court finds that Defendants did not take steps to preserve the schedules in December 2019.

In sum, Defendants should have taken steps to preserve the September 2019 schedule in December 2019 but did not.

**D.  Prejudice**

"After the threshold requirements have been satisfied, Rule 37(e)(1) 'permits the imposition of sanctions only when there is 'prejudice to another party from loss of the information.'" *Lokai Holdings*, 2018 WL 1512055, at *12 (quoting *Leidig*, 2017 WL 6512353, at *12).  "Proof of relevance does not necessarily equal proof of prejudice." *Karsch*, at *20 (quoting *Best Payphones, Inc. v. City of New York*, 2016 WL 792396, at *5 (E.D.N.Y. Feb. 26, 2016)).  The Advisory Committee Note to Rule 37(e) explains that an "evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation."  Courts within the Second Circuit generally require that the lost evidence was not only probative, but also would affirmatively support the movant's claim to find prejudice. *Ungar v. City of New York*, 329 F.R.D. 8, 15 (E.D.N.Y. 2018).  The requirement that a movant show that the evidence would have supported his or her case serves the purpose of elucidating the appropriate remedy for the spoliation.  *Id*. (citing *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998) (explaining that such proof is necessarily incident to the task of "attempt[ing] to place the innocent party in the same position he would have been in had the evidence not been destroyed by the offending party")).  However, in some cases, courts may not require proof that the missing evidence support the movant's claim.  *Stanbro v. Westchester County Health Care Corp.*, 2021 WL 3863396, at *15 (S.D.N.Y. Aug. 27, 2021) (discussing caselaw).  This

is because even where the spoliator acted with mere negligence, as between the innocent and negligent parties, courts recognize that the negligent party has no right to benefit from its negligence.  *Ungar*, 329 F.R.D. at 16.

Here, there is no doubt that the September 2019 Schedule, which includes the weeks leading up to Plaintiff's termination, is relevant to Plaintiff's claim of disparate treatment and to Defendants' defense that it terminated Plaintiff for legitimate non-discriminatory, non-retaliatory reasons.  The September 2019 Schedule, which presumably would show Plaintiff's similarly situated coworkers' scheduled daily start and end times for the month in which Plaintiff was fired, could assist in supporting Plaintiff's case and rebutting Defendants' defense by establishing pretext.  In particular, the schedule would assist Plaintiff in evaluating whether similarly situated coworkers were as late on as many days as Plaintiff in the month of September 2019.  While it is true that an approximate schedule can be reconstructed through existing evidence, only inferences can be made from the reconstruction.  In the absence of the exact schedule for use to compare against the daily check in records, I find that Plaintiff has been prejudiced within the meaning of Rule 37(e)(1) by the lost September 2019 Schedule.  Because Plaintiff herself argues that matching the schedule to the check-in times also does not definitely demonstrate if a particular person was late on a particular day, however, the prejudice is not great.  With or without the schedule, because managers did not clock in and out in the same way hourly employees did, inferences need to be made from the documentation that exists.  Additionally, only one month is missing—Defendants have produced the schedules for all other relevant months.  They also have produced check-in records for the entire relevant period, including September 2019.  In other words, Plaintiff can

13

evaluate her attendance against other managers based on a complete set of records for the period December 2018 through August 2019. She will still be able to mount an argument that her attendance was no worse than others' attendance in September by inference to the historical schedules, testimony that the schedules did not change drastically from month to month and the September check-in records.[2]

### E. Intent to Deprive

Plaintiff asserts that Defendants deserve the harshest penalties under Rule 37(e)(2). As noted above, Plaintiff bears the burden of showing by clear and convincing evidence that Defendants acted not just negligently, but with intent to deprive her of the September schedule. Plaintiff has not met this burden. To start, there is no evidence that a particular person intentionally deleted or destroyed the schedule. *See Fashion Exch. LLC*, 2021 WL 1172265, at *7 ("[W]ithout evidence of affirmative conduct that Fashion Exchange deliberately disposed of its documents, Magistrate Judge Wang made the reasonable conclusion that Rule 37(e)(2) sanctions were unwarranted.") Other months' schedules exist and were produced and, according to Plaintiff, show that Taveras' attendance and punctuality was comparable to hers but yet he was not discharged because of it. Thus, Defendants' production of the other schedules has assisted Plaintiff in mounting her case. There is nothing special about the September schedule that would indicate it is any more helpful to Plaintiff and hurtful to Defendants than the other months' schedules. In other words, if there were intentional destruction, one would assume all the schedules would have been destroyed, not just the

---

[2] Notably, Plaintiff does not attempt to reconstruct the September schedule in arguing this motion. She points to no other co-worker in the period December 2018 through August 2019 (for which there are complete records) whose lateness was as great or greater than hers other than Taveras.

September 2019 schedule.  Further, Defendants produced check-in time records for the month of September, which provide at least a partial picture of when people reported to work that month.  If there were an intent to deprive, presumably the check-in records for September also would have been destroyed.  Said another way, Defendants' production of the December 2018 through August 2019 schedules, along with the "check-in records" from December 2018 through September 2019 undercut the argument that Defendants acted with the intent to deprive.  The produced materials provide Plaintiff substantial information and comparator evidence to support her claims and, according to Plaintiff, support her claim that Taveras was similarly late but not discharged for it.  Plaintiff's assertion of an intent to deprive is further weakened by the fact that Defendants made efforts with their IT team to locate and produce the September 2019 Schedule.  *See Cruz*, 2019 WL 4805765, at *14 (considering defendants' attempt to retrieve lost ESI in concluding that the record did not demonstrate an intent to deprive).

Plaintiff appears to acknowledge that she cannot demonstrate intent to deprive and falls back on the argument that negligence can satisfy the mens rea needed to support the harshest sanctions under Rule 37(e)(2).  However, as noted above, she relies on outdated case law that was superseded by the 2015 amendments to Rule 37(e).  Thus, her argument is unpersuasive.

In sum, while Defendants failed to take reasonable steps to preserve the September 2019 Schedule, the Court is not persuaded by clear and convincing evidence that Defendants did so for the specific purpose of gaining an advantage in the litigation.  Accordingly, the

harshest sanctions, including an adverse inference, under Rule 37(e)(2) are not appropriate in this case.

### F. Appropriate Remedies

Having found that adverse inference sanctions are not appropriate, the Court considers appropriate relief under Rule 37(e)(1), mindful that "the sanctions must be 'no greater than necessary to cure the prejudice to [Plaintiffs].'" *Charlestown Cap. Advisors*, 337 F.R.D. at 67 (quoting Fed. R. Civ. P. 37(e)(1)).

Plaintiff requests that the jury be instructed that (1) the September 2019 Schedule was destroyed by Equinox, (2) the parties may use other documents and testimony produced in discovery to infer the work schedules of Taveras, Maltman, Ahluwalia, LeMasters, Harrison, Chism, Anta, and De Leon (together, the "Coworkers"), that the Coworkers had the same rate of lateness for September 2019 as December 2018 through August 2019, or that their lateness had increased during September 2019, and (3) that in the absence of documentary evidence or testimony, there can be no inference that the Coworkers' lateness improved in September 2019.  (Pl. Memo. of Law, p. 21.)

As for the first proposed instruction, the Court finds that the word "destroyed" is too harsh in light of the record being silent as to any affirmative conduct of Defendant.  This proposed instruction may have a prejudicial impact on Defendants that is greater than necessary to cure the prejudice from the missing schedule.  However, to the extent either side seeks to admit or use the schedules in evidence, Plaintiff should be allowed to present evidence to the jury that the September 2019 Schedule was lost.  *See Leidig*, 2017 WL 6512353, at *14 (permitting a party to "present evidence to the jury" that the opposing party lost ESI it should

have preserved "after litigation was threatened and at a time when they were legally obligated to preserve it").

Plaintiff's other suggestions pertain to inferences that may be drawn from the evidence that was produced. The Court finds her suggestion that the parties be permitted to use other documents and testimony produced in discovery to argue (and the jury be instructed that it may infer) that Plaintiff's co-workers' patterns or rate of lateness in the period December 2018 through August 2019 remained the same or increased in the month of September 2019 is appropriate. Similarly, her suggestion that Defendants be precluded from arguing (and the jury be precluded from inferring) that those co-workers' patterns or rate of lateness decreased in the month of September 2019 is appropriate. In other words, Defendants will not be permitted to argue that Plaintiff's attendance was worse than her co-workers in the month of September 2019. They will still be permitted to argue that Plaintiff's attendance was worse than her co-workers for the period December 2018 through August 2019 and that she was late on various days in September 2019 as indicated in her termination notice, but they will not be able to compare her lateness to that of others for the month of September. This sanction ensures that Defendant does not benefit from its negligence.

Because the undersigned is not supervising the trial of this case, it does not suggest any specific jury instruction. The trial judge will be in the best position to instruct the parties on the introduction of evidence and arguments that can be made and then determine the precise language of any necessary jury instruction consistent with this Order.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions is GRANTED in part and DENIED in part.  Relatedly, Plaintiff's motion to seal exhibit 5 (ECF No. 75) to her motion for sanctions is DENIED.   Plaintiff has not demonstrated any countervailing reasons or higher values to overcome the presumptive right of access to judicial documents.  *See Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 124 (2d Cir. 2006).

The Clerk is respectfully requested to terminate the motions pending at ECF Nos. 75 and 77.

**SO ORDERED.**

Dated:   March 21, 2022
         New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge