**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBYNN EUROPE,

Plaintiff,

-against-

EQUINOX HOLDINGS, INC. d/b/a EQUINOX
FITNESS CLUB, EQUINOX EAST 92ND
STREET, INC., JOSE TAVERAS, *individually*,
CHRISTOPHER MALTMAN, *individually*, and
ADAM GECHT, *individually*,

Defendants.

Case No.: 1:20-cv-07787 (JGK) (KHP)

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND/OR A NEW TRIAL OR REMITTITUR

---

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Greg Riolo, Esq.
Jason A. Zoldessy, Esq.

*Attorneys for Defendants Equinox Holdings,*
*Inc. and Equinox East 92nd Street, Inc.*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................ii - iv

PRELIMINARY STATEMENT .................................................................................................1

LEGAL STANDARD.................................................................................................................1

ARGUMENT...............................................................................................................................2

I.      EQUINOX IS ENTITLED TO JMOL OR A NEW TRIAL ON LIABILITY AS THE
        JURY'S VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE. ........................2

    A.  Discriminatory Termination................................................................................... 2
    B.  Hostile Work Environment .................................................................................... 4

II.     EQUINOX IS ENTTLED TO A NEW TRIAL OR REMITTITUR ON THE $1.25
        MILLION COMPENSATORY DAMAGES AWARD. .................................................7

    A.  The Jury's Award Does Not Comport with the Degree of Emotional Distress
        Experienced................................................................................................................ 8
    B.  The Jury's Compensatory Damage Award is Punitive. .................................................. 15

III.    EQUINOX IS ENTTLED TO JMOL OR A NEW TRIAL OR REMITTITUR ON
        THE $10 MILLION PUNITIVE DAMAGES AWARD...................................................15

    A.  Plaintiff Cannot Meet the Standard for Punitive Damages Under the NYCHRL. ........... 16
    B.  The Punitive Damages Award Grossly Exceeds Comparable Civil Penalties Under The
        NYCHRL. ................................................................................................................ 18
    C.  The Punitive and Compensatory Damage Awards Are Grossly Disparate. ..................... 19

CONCLUSION.................................................................................................................21

CERTIFICATION OF COMPLIANCE ........................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

ABKCO Music, Inc. v. Sagan,
  50 F.4th 309 (2d Cir. 2022) ........................................................................................2

Anderson v. N.Y.C. Health & Hosps. Corp.,
  No. 16-CV-1051, 2023 U.S. Dist. LEXIS 46814 (S.D.N.Y. March 20, 2023) ........................2

BMW of N. Am. v. Gore,
  517 U.S. 559 (1996).....................................................................................16, 19, 20

Caravantes v. 53rd St. Partners, LLC,
  No. 9 Civ. 7821 (RPP), 2012 U.S. Dist. LEXIS 120182 (S.D.N.Y. Aug. 23,
  2012) ..............................................................................................................14

Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.,
  824 F. Supp. 573 (S.D.N.Y. Nov. 3, 2011).....................................................................19

DeLuca v. Sirius XM Radio, Inc.,
  No. 12-cv-8239 (CM), 2017 U.S. Dist. LEXIS 127278 (S.D.N.Y. Aug. 7,
  2017) ................................................................................................................5

Duarte v. St. Barnabas Hosp.,
  341 F. Supp. 3d 306 (S.D.N.Y. 2018).................................................................17, 18, 19, 20

Exxon Shipping Co. v. Baker,
  554 U.S. 471, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008).....................................................20

Farrior v. Waterford Bd. Of Educ.,
  277 F.3d 633 (2d Cir. 2002)......................................................................................2, 7

Loeffler v. Staten Island Univ. Hosp.,
  582 F.3d 268 (2d Cir. 2009)........................................................................................5

Lugo v. City of N.Y.,
  518 F. App'x 28 (2d Cir. 2013) ....................................................................................2

MacMillan v. Millennium Broadway Hotel,
  873 F. Supp. 546 (S.D.N.Y. June 11, 2012) .....................................................................19

McGrory v. City of New York,
  No. 99 Civ. 4062 (FM), 2004 U.S. Dist. LEXIS 20425 (S.D.N.Y. Oct. 8,
  2004) ..............................................................................................................13

Millea v. Metro-North R.R. Co.,
  658 F.3d 154 (2d Cir. 2011)........................................................................................1

Moccio v. Cornell Univ.,
  889 F. Supp. 2d 539 (S.D.N.Y. 2012).......................................................................2

Payne v. Jones,
  711 F.3d 85 (2d Cir. 2012)..........................................................................................9

Qorrolli v. Metro. Dental Assocs., D.D.S.,
  No. 18 Civ. 6836 (DLC), 2022 U.S. Dist. LEXIS 226228 (S.D.N.Y. Dec. 15,
  2022) ..........................................................................................................................20

Raedle v. Credit Agricole Indosuez,
  670 F.3d 411 (2d Cir. 2012)....................................................................................2, 7

Ramirez v. Michael Cetta Inc.,
  No. 19 Civ. 986 (VEC), 2020 U.S. Dist. LEXIS 180619 (S.D.N.Y. Sept. 30,
  2020) ............................................................................................................................5

Rosas v. Balter Sales Co.,
  2018 U.S. Dist. LEXIS 109332 (VSB), (S.D.N.Y. June 29, 2018) .........................13

Sooroojballie v. Port Auth. Of N.Y. & N.J.,
  816 Fed. Appx. 536 (2d Cir. 2020)...............................................................8, 9, 13, 14, 17

Stampf v. Long Island R.R.,
  761 F.3d 192 (2d Cir. 2014).................................................................................15, 20

State Farm Mut. Auto. Ins. Co. v. Campbell,
  538 U.S. 408 (2003).............................................................................................16, 20

This Is Me, Inc. v. Taylor,
  157 F.3d 139 (2d Cir. 1998)........................................................................................2

Thomas v. iStar Fin., Inc.,
  652 F.3d 141 (2d Cir. 2010)..........................................................................18, 20, 21

Tse v. UBS Fin. Servs.,
  568 F. Supp. 274 (S.D.N.Y. 2008) ...........................................................................19

Turley v. ISG Lackawanna, Inc.,
  774 F.3d 140 (2d Cir. 2014)..........................................................................13, 15, 20, 21

Villalta v. JS Barkats, P.L.L.C.,
  No. 16 Civ. 2772 (RA), 2021 U.S. Dist. LEXIS 75071 (S.D.N.Y. Apr. 16,
  2021) .....................................................................................................................14, 21

Williams v. N.Y.C. Hous. Auth.,
    61 A.D.3d 62 (1st Dep't 2009) ............................................................................2, 5

**Statutes**

New York City Human Rights Law......................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 50 .................................................................................................. *passim*

Fed. R. Civ. P. 59 .................................................................................................. *passim*

## PRELIMINARY STATEMENT

On May 15, 2023, a jury found Defendants Equinox Holdings, Inc. and Equinox East 92nd Street, Inc. (collectively "Equinox" or "Defendants") liable for race and gender discrimination, as well as a hostile work environment, in violation of the New York City Human Rights Law ("NYCHRL"). On May 16, 2023, the jury awarded Plaintiff Robynn Europe ("Plaintiff") compensatory damages in the amount of $1.25 million and punitive damages in the amount of $10 million. For the reasons described in greater detail herein, Defendants submit that the jury, which seemingly was guided by sympathy and emotion, erroneously found in favor of Plaintiff on liability, and subsequently issued extreme, unconscionable damages awards that are not supported by the evidence, and which cannot be sustained as a matter of law. Accordingly, Defendants submit this Memorandum of Law pursuant to Fed. R. Civ. P. 50(b) in support of their motion for judgment as a matter of law. If such motion is not granted, Defendants move pursuant to Fed. R. Civ. P. 59 for a new trial or, alternatively, for remittitur of the jury's awards of compensatory and punitive damages.

## LEGAL STANDARD

Under Rule 50, Fed. R. Civ. P., a court may grant a party judgment as a matter of law if the "party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue." There must be either "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or "such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded persons could not arrive at a verdict against it." Millea v. Metro-North R.R. Co., 658 F.3d 154, 161 (2d Cir. 2011).

A Rule 50(b) motion is decided according to the same standard as a motion for summary judgment under Rule 56(f). Anderson v. N.Y.C. Health & Hosps. Corp., No. 16-CV-

1

1051, 2023 LEXIS 46814, at *2-3 (S.D.N.Y. Mar. 20, 2023); This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998).

Under Rule 59, a district court may grant a new trial if the jury's verdict was "against the weight of the evidence." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417 (2d Cir. 2012); Farrior v. Waterford Bd. Of Educ., 277 F.3d 633,634 (2d Cir. 2002). A court should grant a motion for a new trial if "the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." ABKCO Music, Inc. v. Sagan, 50 F.4th 309, 324 (2d Cir. 2022). The Court may assess the evidence and the witnesses' credibility independently, without viewing them in either party's favor. Raedle, 670 F.3d at418 (2d Cir. 2012).

## ARGUMENT

I. **EQUINOX IS ENTITLED TO JMOL OR A NEW TRIAL ON LIABILITY AS THE JURY'S VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.**

### A. Discriminatory Termination

Under the NYCHRL, Plaintiff must establish that she was treated "less well" because of her race or sex in her employment termination. See Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 78 (1st Dep't 2009). Moreover, courts require some evidence "from which discrimination can be inferred." Lugo v. City of N.Y., 518 F. App'x 28, 30 (2d Cir. 2013). Here, Plaintiff's claims should be dismissed as she has not produced any evidence she was treated less well or that her employment was terminated because of her race or sex. See Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 574 (S.D.N.Y. 2012).  Here, there was no direct evidence that Jose Taveras, who was the decision maker involved in Plaintiff's termination, or Adam Gecht, who was Taveras' supervisor and approved of the termination, made any racially based or gender-based comments to demonstrate animus.  Rather, Plaintiff testified that she told Taveras about certain of her subordinate's (Maltman's) offensive comments (Tr. 118:22-25).  The only other testimony that

2

that involves Taveras is the allegation Taveras instructed Maltman to set up the member involved in the "trainer incident" with lessons during the investigation.  However, the evidence at trial showed that after Plaintiff complained about this, Taveras was disciplined and issued a Record of Discussion (D-15).  Taveras' employment was also later terminated,  and the evidence showed that this was in part due to his involvement in the trainer incident and his own lateness (Tr. 595:5-596:7).  While Plaintiff did include the term "biased" in her Record of Involuntary Separation (J-5), this along with Taveras's involvement in the trainer incident is insufficient to support a jury's finding of discrimination or animus in Taveras' decision-making.

As Plaintiff testified at trial and as she wrote in her comments in her Records of Discussion, she believes she was written up because of complaints she made about Taveras' leadership (Tr. 306:18-22).[1]  Plaintiff's evidence on the disparate treatment rested on the comparator information taken from the check-ins and schedules of other managers who were not disciplined, as well as the fact that Taveras was "even later" more than she was (P-5 and P-6).  However, the evidence at trial showed that there were other female managers and a manager of color that were included as comparators.  Importantly, Plaintiff never disputed that she was in fact late 47 times between April and August (the RODs did not reference attendance in June or July)—not during her employment, nor in any comment section or email, but her Record of Involuntary Separation [ROIS] included 23 times in August and September prompting her termination. (J-3, J-4, J-5).  The evidence is not legally sufficient to sustain Plaintiff's claim under Rule 50(b).

---

[1] The Court dismissed Plaintiff's retaliation claims on summary judgment finding that Equinox commenced disciplinary action in April prior to any protected activity engaged in by Plaintiff.  Plaintiff's testimony that she cannot separate out that she, as a black woman, complained and was disciplined, does not support a discriminatory motive or animus.  There are no allegations of any comments by Taveras to Plaintiff to evidence animus based on race or gender.

Even if not entitled to judgment as a matter of law, for the reasons stated above, Equinox is entitled to a new trial pursuant to Rule 59 as the verdict of discriminatory termination based on race and gender is against the weight of the evidence and seemingly based largely, if not entirely, on the exhibits prepared by Plaintiff's counsel comparing the various managers. Despite Plaintiff's awareness that her job was on the line following two prior RODs (Tr. 302:19-305:13; 565:10-25), and the fact that Plaintiff had access to the swipe-in information throughout her employment (which Paul Kwon did not have), Plaintiff did not provide information about the other managers who she claimed were also frequently late to Paul Kwon, the People Services representative who reviewed and approved Plaintiff's termination (other than Plaintiff's reference to June and July dates for Taveras (D-22)).[2]  Based on the evidence submitted, there is simply no basis to support a finding that Taveras' termination decision (or Kwon's approval of the termination decision) was motivated, in any part, by discriminatory animus.

**B.    Hostile Work Environment**

To prevail on a claim for hostile work environment under the NYCHRL, Plaintiff must prove six elements by a preponderance of the evidence: (1) she was a member of a protected class and that her co-workers believed that Plaintiff was a member of that protected class; (2) she was subjected to discriminatory comments, either through words or actions, based on her membership in that protected class; (3) the conduct was unwelcome; (4) a reasonable person would consider that she was treated less well than other employees by Equinox because of her protected class; (5) Plaintiff actually believed that she was treated less well by Equinox because Plaintiff was

---

[2] Kwon testified that he had not met Plaintiff and did not know her race (Tr. 550:8-13).  Kwon's email with Gecht, while maybe incomplete on following up about Taveras' lateness, does not evidence animus toward Plaintiff (D-22). Further, Taveras not turning himself in is not evidence of a discriminatory motive in terminating Plaintiff.

a member of a protected class; and, (6) prove that there is a specific basis for imputing any comments or remarks that created the hostile work environment to Equinox by showing that Equinox knew of the hostile work environment based on Plaintiff's race and gender and either accepted it or failed to take immediate and appropriate corrective action; or showing that the employee who was involved in the alleged discriminatory conduct exercised managerial or supervisory responsibility and knew of the discriminatory conduct at a point when the company could have taken action to prevent it, but did not do so.   See Williams v. New York City Housing Authority, 61 A.D.3d 62, 76, 872 N.Y.S.2d 27, 38 (1st Dep't 2009); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 279 (2d Cir. 2009).

The NYCHRL "is not intended to operate as a 'general civility code,'" DeLuca v. Sirius XM Radio, Inc., No. 12-cv-8239 (CM), 2017 U.S. Dist. LEXIS 127278, at *54-55 (S.D.N.Y. Aug. 7, 2017), quoting Williams, 61 A.D. 3d at 80 (App. Div. 1st Dep't, Jan. 27, 2009). "[W]here a plaintiff fails to demonstrate that the defendant's conduct was caused 'at least in part by discriminatory or retaliatory motive,' plaintiff's claim must fail." Ramirez v. Michael Cetta Inc., No. 19 Civ. 986 (VEC), 2020 U.S. Dist. LEXIS 180619, at *55 (S.D.N.Y. Sept. 30, 2020) (quoting Mihalik, 715 F.3d at 113).

Equinox is not liable because there is no basis in the record to conclude that Plaintiff was subjected to a hostile work environment. The record fails to show anything other than the following conduct by Plaintiff's direct subordinate which included (i) five repeated comments made about one member (Tr. 103:17-104:13;106:4-10); (ii) Plaintiff and Maltman's trip to a coffee shop so Maltman could ask out a barista (Tr. 108:8-109:2); (iii) comments that Maltman called six trainers of color lazy and or unreliable (many of whom Plaintiff also had issues with their performance)(Tr. 112-115; 251-253); (iv) that Maltman gave leads for new clients based on race

5

(Plaintiff's witness Chris Rodriguez also testified that Plaintiff failed to give him leads, which Plaintiff acknowledged on cross-examination, and that Plaintiff used derogatory comments directed at him and other personal trainers)(Tr. 61:4-19; 112:16-18; D-10); (v) that Maltman referred to another personal trainer as a "little bitch" and misgendered him (Tr. 112-113; 173:4-17); (vi) that Maltman referred to another member who was dating an employee – who was a trans woman – as hot and asking if she had a d—k on one occasion (Tr. 115-117); (vii) that Maltman showed Plaintiff a picture of his ex-girlfriend on one occasion (Tr. 109-110); and (viii) Maltman's two comments to another employee about being autistic and asking if she was the sister of another employee (D-21); [3] and separately (ix) the claim against a Membership Advisor that a member asked for a "white trainer".[4]  Despite other general statements of "inappropriate racial comments" in an email when discussing one of the above issues to People's Services, there were no other allegations to support the alleged hostile work environment claim.[5]

Based on the above issues, Equinox maintains that a reasonable jury, even considering all the above, would not have a legally sufficient basis to find for Plaintiff and therefore, Equinox is entitled to judgment as a matter of law under Rule 50(b).  There is no

---

[3] On examination, Maltman denied the allegations in (i), (iii), (iv), (vi) and (vii).

[4] The Star Trek Video and the text messages between Maltman and another Equinox manager were not known to Plaintiff until discovery in this litigation and should have been excluded in accordance with Equinox's motion in limine to exclude the video, at least during the liability stage of the trial. Further, Maltman's statement to Rodriguez about carrying the member on his back was told to Plaintiff after both she and Rodriguez were terminated (Tr. 87:20-88:11).

[5] When asked about this comment in her email to Stephanie Herrmann by her attorneys, Plaintiff did not provide any additional examples of what this referred to and cannot support a claim that this general statement lends additional support for her hostile work environment claim. (Tr. 210:18-211:10).

evidence that Maltman made the above comments to Plaintiff based on her race and gender or that a reasonable person would find they were treated less well by Maltman.[6]  It was known that Maltman dated black women, and one of Plaintiff's witnesses testified he believed Maltman fetishized black women (Tr. 63:6-10).[7]  As to the trainer issue, the record was clear that when Equinox learned of the incident, within a day, it commenced an investigation and within a week, took action against two employees.  At trial, Plaintiff faulted Equinox for allowing the member to continue to train after this incident although the member denied making a racist request and described a trainer as the Russian trainer. The jury could not take into account the member's request as support for the hostile work environment.  Rather, plaintiff relies on the member getting lessons and Plaintiff having to face the member to support her claim.  Given the dispute in what was said, and acknowledgement that the request was conveyed improperly to Plaintiff, Equinox acted appropriately in its decisions on discipline.[8] Even if not entitled to judgment as a matter of law, for the reasons stated above, Equinox is entitled to a new trial pursuant to Rule 59 as the verdict is against the weight of evidence.  See Raedle, 670 F.3d at 417; Farrior, 277 F.3d at 634.

## II.   EQUINOX IS ENTTLED TO A NEW TRIAL OR REMITTITUR ON THE $1.25 MILLION COMPENSATORY DAMAGES AWARD.

Even if the Court does not grant the motion for judgment under Rule 50 or a new trial under Rule 59 for the reasons above, the jury's award of compensatory damages for purported

---

[6] Maltman was issued a Record of Discussion for his autistic comment and comment about the employee being sisters with another employee (D-21).

[7] The jury appears to have disregarded Plaintiff's predecessor Marcell Harrison (a black female) who denied that Maltman made any inappropriate statements regarding black women.  (Tr. 489:13-490:7).

[8] The Membership Advisor, the employee who conveyed the request to Plaintiff, is not a supervisor under the law and was promptly issued a Record of Discussion. (D-14).

emotional distress in the amount of $1.25 million is grossly excessive and requires a grant of a new trial under Rule 59 or remittitur by the Court.  Plaintiff worked at Equinox for approximately nine months at East 92nd Street and, to the extent she incurred any emotional distress in connection with her employment, she admits it did not start until March 2019.  By her own testimony, her emotional distress and the exacerbation of her bulimia was short-lived as her binging and purging behaviors  reverted within 2 to 3 months after the end of her employment to the level she was at prior to her employment with Equinox, and neither resulted in long-term physical harm.  Plaintiff was able to obtain new employment shortly after her September 2019 termination and is not claiming that the symptoms she attributes to Equinox persisted beyond late 2019.  Further, there was very limited support or reference in her clinician's records that were submitted to the jury regarding work issues and no reference to the increase in her bulimia symptoms.  The disconnect between the jury's award and the record, as well as the awards in comparable cases, supports that the award here likely reflects the jury's deep sympathy for Europe.  This, however, is an improper bases for compensatory damages, which must be limited to making Europe whole for any actual harm she experienced.  Accordingly, the Court should grant a new trial pursuant to Fed. R. Civ. P. 59.  At a minimum, the Court should remit Plaintiff's award to an amount that is less than $250,000, which under well-developed case law seemingly is the maximum amount sustainable as a matter of law.

### A.    The Jury's Award Does Not Comport with the Degree of Emotional Distress Experienced.

The Court's specific role in the calculation of damages is to determine "whether the award is so high as to shock the judicial conscience and constitute a denial of justice." Sooroojballie v. Port Auth. Of N.Y. & N.J., 816 Fed. Appx. 536, 545-46 (2d Cir. 2020) (quoting DiSorbo v. Hoy, 343 F.3d 172, 183 (2d Cir. 2003)).  In serving in this narrow role, courts possess

the authority and power—and indeed, are duty-bound—to scrutinize the size of awards rendered in the trial courts within the Second Circuit.  See Payne v. Jones, 711 F.3d 85, 96 (2d Cir. 2012) ("Responsibility to appraise these matters of necessity falls on the courts[.]").  To determine whether an award is excessive, courts "are bound by precedent to compare the awards in this case with the awards in analogous cases."  Sooroojballie, 816 Fed. Appx. at 546.  Here, the compensatory damages award of $1.25 million represents an extreme upward departure from the ranges of awards allowed in comparable cases, especially where, as here, Plaintiff's clinician records do not corroborate that her mental condition was exacerbated by her alleged treatment at Equinox.

When assessing whether a jury award for compensatory damages is excessive, as it is here, courts in the Second Circuit routinely consider three degrees/categories for emotional distress: (1) garden variety; (2) significant; and (3) egregious.  See Sooroojballie, 816 Fed. Appx. at 546 (citations omitted).  The first category is garden variety, which largely consists of a plaintiff's own testimony and testimony of other lay witnesses.  Id.  Defendants submit that this case may be viewed as a garden variety case because Plaintiff's evidence of damages is based entirely on lay testimony of her long-time friend Joseph Klein and herself, a therapist who did not begin treating Plaintiff until 2021, and limited therapist records from the time Plaintiff worked at Equinox.  The treating therapist who testified at trial did not treat Plaintiff until well after Plaintiff's termination from Equinox and after Plaintiff admits that all of her symptoms that she attributes to Equinox were no longer affecting her mental health.

During her direct, Plaintiff was asked about only three interactions with her therapist from 2019 that mentioned work issues.  Significantly, none of the progress notes from those sessions mention any specific issues at Equinox but made only general reference to tensions

or microaggressions she was having at work.  Even if considered by the Court to be more than garden variety, Plaintiff's emotional distress claims *at most* rises to the "significant" level.  Under any analysis, the evidence falls far short of rising to the threshold for "egregious" cases because Plaintiff's evidence of emotional distress does not approach the requisite type of shocking and prolonged discriminatory conduct.

Plaintiff's emotional distress relates almost entirely to her eating disorder (bulimia), for which she first experienced symptoms at the age 17 and was eventually diagnosed in 2012. (Tr. 827:9-828:17).  Since her approximately eleven-year-old diagnosis, Plaintiff has sought treatment.  Before being hired by Equinox, Plaintiff was binging and purging "several times a week," which she testified to be her baseline.  (Tr. 828:11-829:11, 898:17-24).  Plaintiff testified that due to workplace stress, this increased to once a day by March 2019 and multiple times a day by June 2019 and throughout the summer. (Tr. 830:6-12, 881:3-9).  Plaintiff testified that after she was terminated in September 2019 "it [felt] kind of like a blessing that I got out of there and was able to regain control of my life… ."  (Tr. 886:2-13).  Plaintiff promptly re-entered the job market and began working at a new position by November 2019.  (Tr. 886:22-25).  By the end of 2019, Plaintiff made "great progress" and her eating disorder was back to the baseline at which it had been prior to her working at Equinox.  (Tr. 888:5-17).

Additionally, Plaintiff alleges that while employed by Equinox she experienced other symptoms as being potential manifestations of her emotional distress, such as work stress which she claims exacerbated her eating disorder (Tr. 878:16-880:24), resulting, for example, in her feeling nauseous from overeating after the white trainer incident (Tr. 832:15-18), and damage to the enamel on her teeth and esophagus (Tr. 881:15-882:7).  Plaintiff also testified about lightheadedness, dizziness, heart palpitations, low blood pressure and weight loss all being cause

10

by the vomiting that resulted from bulimia.  (Tr. 882:2-7).  Even this testimony does not support

an award above the ranges for significant emotional distress.

   During the time that Plaintiff was working at Equinox she treated with a therapist,

Swaroopa Ramkumar, and the record evidence from the therapist does not reference any of the

above issues in the clinician's records.  Ms. Ramkumar's notes from February 2019 through

September 2019, which were prepared during each weekly session, contain a total of <u>three</u>

references to Plaintiff's employment with Equinox, all of which were addressed by her counsel

during Plaintiff's direct testimony.  (P-10, Bates nos. RE0141, RE0109, RE0114).  None of the

records reference an increase in binging and purging or any of the other issues Plaintiff's testified

she was experiencing during her employment, and the records certainly do not attribute to Equinox

the aggravation of Plaintiff's symptoms.

   To the contrary, hardly any of the records reference work issues, let alone any work

issues as being a stressor in Plaintiff's life.  Instead, the records focus on relationship issues and

other significant personal issues that Plaintiff was experiencing during the same time period. <u>Id.</u>

For example, a progress note dated shortly after the issuance of Plaintiff's first ROD in April 2019

noted that Plaintiff had a panic attack triggered by the death of a friend.[9]  (Tr. 905-08; P-10, Bates

no. RE0110).  Even the note dated three days after Plaintiff's separation fails to reference

Plaintiff's symptoms as being exacerbated because of work, let alone her termination.  In fact, her

therapist notes characterize Plaintiff's progress as having "somewhat improved."  (P-10, Bates no.

RE0123; Tr. 910).

---

[9] Plaintiff, on re-direct, noted that this stress and recovery was different from her issues at Equinox.  Any examination
of Plaintiff on these other stressors merely showed that other issues, not related to work, were discussed during certain
sessions, and other than those three occasions, no references to issues at work.

When Plaintiff began treating with a new therapist, Nisreen Osseili, in February 2021, (Tr. 86410-11, 913:13-914:1), she hardly discussed her employment with Equinox at all. For example, Plaintiff did not reference Equinox in her initial intake forms when she first came to Ms. Osseili, and Ms. Osseili's notes from February 2021 through the end of 2022 make no reference whatsoever to Equinox or any symptoms experienced by Plaintiff that she attributes to Equinox; the sole exception being an entry from July 2021 when Plaintiff told Ms. Osseili about being deposed in connection with the litigation. (Tr. 871:4-13; P-12, RE0316). Ms. Osseili testified that Plaintiff's symptoms have improved significantly and that she has not binged and purged in over three months. (Tr. 865:4-7). Ms. Osseili further testified that at the time she started treating Plaintiff in February 2021, Plaintiff was binging and purging with the same baseline frequency as prior to commencing employment with Equinox. (Tr. 867:12-15). Plaintiff's symptoms have continued to improve over the course of time, and Plaintiff testified that she has been "completely symptom free since New Year's Eve." (Tr. 889:20-21).

Plaintiff's one other witness, Mr. Klein, testified that during Plaintiff's employment with Equinox "she was sort of disappointed, sad." (Tr. 818:21-23). He also testified that her skin changed, she lost weight and that he witnessed Plaintiff cry several times due to work frustration. (Tr. 821:1-22). He did not testify about any egregious or permanent evidence of emotional distress.

This case is very similar to Sooroojballie, a "significant damages" case where the Second Circuit concluded that the jury's award of $2,160,000 for emotional distress damages "far surpass[ed] the upper limit of the reasonable range and []shock[ed] the judicial conscience." 816 Fed. Appx. at 548. In Sooroojballie, the Court determined, after considering the evidence and surveying comparable cases, that the upper limit of the reasonable range for the significant emotional distress experienced by the plaintiff was $250,000. 816 Fed. Appx. at 548. There, the

Court concluded that awards with significant emotional distress claims "usually range from $50,000[] to $200,000[]" and in some rare instances could exceed $200,000, up to $300,000, if the evidence warranted such an amount—but no more.  Sooroojballie, 816 Fed. Appx. at 547 (citing Emamian v. Rockefeller Univ., No. 7 Civ. 3919 (DAB), 2018 U.S. Dist. LEXIS 97674, *16 (S.D.N.Y. June 8, 2018), where the Court reduced the $2 million jury award to $200,000 because the distress was in the significant range given plaintiff's testimony about her own mental state, physical manifestations, and corroborative medical testimony); see also Rosas v. Balter Sales Co., 2018 U.S. Dist. LEXIS 109332 (VSB), at *28 (S.D.N.Y. June 29, 2018) (remitting $800,000 award to $180,000 where the emotional distress damages were at most in the "significant" tier); McGrory v. City of New York, No. 99 Civ. 4062 (FM), 2004 U.S. Dist. LEXIS 20425 (S.D.N.Y. Oct. 8, 2004) (remitting $533,390 award to $100,000 in race retaliation case where the plaintiff presented evidence of his emotional distress through testimony, including that of his psychiatrist).

The record evidence of this case falls squarely in the ranges above and certainly does not warrant an award in the "egregious" category.[10]  The Second Circuit has long-established that "egregious" cases are ones that, unlike here, involve long-lasting psychological effects and/or ongoing treatment because of workplace discrimination.  See Sooroojballie, 816 Fed. Appx. at 547.  See, e.g., Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 151-52 (2d Cir. 2014) (finding egregiousness where the plaintiff was subjected to "an extraordinary and steadily intensifying drumbeat of racial insults, intimidation, and degradation" over several years—including being referred to as a "n-----" by 30% of his co-workers and finding in his car a stuffed toy monkey with a noose around its neck—that caused post-traumatic stress disorder, short-term adjustment

---

[10] The Star Trek video, which was shared on one occasion years before Plaintiff was employed, was not known to Plaintiff until the discovery in this case, and cannot support any compensatory damage award.

disorder, depression, a panic disorder, and multiple hospitalizations, thus finding the $1.32 million in compensatory damages reasonable, but determining the punitive damages award of over $20 million exceeded the bounds of reasonableness); Villalta v. JS Barkats, P.L.L.C., No. 16 Civ. 2772 (RA) (RWL), 2021 U.S. Dist. LEXIS 75071, *40 (S.D.N.Y. Apr. 16, 2021) (finding awards of $350,000 for compensatory damages and $700,000 in punitive damages were appropriate because the defendant twice sexually assaulted the plaintiff in the workplace, as well as physically assaulted and harassed the plaintiff); Caravantes v. 53rd St. Partners, LLC, No. 9 Civ. 7821 (RPP), 2012 U.S. Dist. LEXIS 120182, *24 (S.D.N.Y. Aug. 23, 2012) (awarding $150,000 in compensatory damages and $40,000 in punitive damages where plaintiff's superiors sexually assaulted him over a period of years and he developed "serious depression," social withdrawal, insomnia, lowered energy level, impaired concentration, suicidal thoughts, sleep disturbance, and appetite disturbances).  Contrary to the well-established case law demonstrating what conduct would rise to the level of "egregious," here, the record evidence does not show any physical misconduct, but rather inappropriate comments that were not even directed at Plaintiff.  There is no claim that Maltman (or anyone else) directed slurs towards Plaintiff, commented about Plaintiff's body, or engaged in any other conduct that is commensurate with the level of harm found in cases courts found were egregious.

       In discrimination cases involving emotional distress of comparable severity and duration, courts in the Second Circuit have routinely granted motions for new trial or remittitur because of arbitrary and disproportionate amounts of damages in jury awards.  Here, the jury's award of $1.25 million shocks the conscience and bears no relation to the evidence presented at trial.  Accordingly, this Court should follow well-established caselaw and remit the damages to a number no higher than the range of comparable significant awards, which, given the brevity of

time and absence of expert (or even treating physician) testimony, we submit should be $50,000-$250,000.

      **B.**      **The Jury's Compensatory Damage Award is Punitive.**

      It is beyond dispute that the jury's compensatory damage award bears no relation to Plaintiff's economic damages, which the Plaintiff agrees was just $16,000. As the jury's award is more than 78 times this amount, there is no viable claim that the award was intended to be proportional to Plaintiff's tangible claim for backpay. Equinox submits that the jury's decision was guided by emotion or sympathy, and the interests of justice dictate that the Court set a new trial or, at a minimum, remit the award. Stampf v. Long Island R.R., 761 F.3d 192, 205 (2d Cir. 2014) ("[A] legal system has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate.").

**III.**    **EQUINOX IS ENTTLED TO JMOL OR A NEW TRIAL OR REMITTITUR ON THE $10 MILLION PUNITIVE DAMAGES AWARD.**

      The Court should also grant JMOL or new trial/remittitur to reduce the jury's blatantly unconstitutional award of $10 million in punitive damages. The jury's outrageous award of punitive damages is not supported by the evidence and must be discarded. As set forth in greater detail below, to the extent this claim is not summarily dismissed, Equinox is entitled to a new trial or remittitur.

      When punitive damages are grossly excessive, they violate the Due Process Clause because "it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." See Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 164 (2d Cir. 2014) (citations and quotations omitted). The framework for assessing whether a punitive damages award violates due process is well established in BMW of N. Am. v. Gore, 517 U.S. 559, 575 (1996), which sets forth three guideposts for courts reviewing punitive damages awards: "(1) the degree of reprehensibility of

the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003) (citing Gore, 517 U.S. at 575). Here, an assessment of the $10 million in punitive damages through all three guideposts demonstrates that the award must be thrown out, or alternatively drastically reduced.

### A.   Plaintiff Cannot Meet the Standard for Punitive Damages Under the NYCHRL.

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Gore, 517 U.S. 575. Here, none of the aggravating factors that are associated with particularly reprehensible conduct is present. Under the NYCHRL, "a plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." Duarte v. St. Barnabas Hosp., 341 F. Supp. 3d 306, 332-333 (S.D.N.Y. 2018) (citations and quotations omitted). A reasonable jury could not have found that Defendants' conduct amounted to willful or wanton negligence, or recklessness, or demonstrated a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard. Defendants moved separately under Rule 50 to dismiss the punitive damages award. Alternatively, Defendants maintain that the jury's punitive damages award is against the weight of the evidence under Rule 59.

None of the complained-of conduct rises to the level of extreme and outrageous conduct that the courts have found warrant awards of punitive damages. As described above, this is not a case involving any pattern—or even a single instance—of physical conduct, and there are no allegations of ongoing harassment. See, e.g., Sooroojballie, 816 Fed. Appx at 549 (where the

16

plaintiff was subjected to discriminatory conduct evidencing malicious motive, including a pattern of harassing behavior and falsely accusing the plaintiff).   Moreover, the record evidence demonstrates that Plaintiff does not have a viable claim that Equinox acted negligently, recklessly, or with a conscious disregard of the rights of others.   Even if all of Plaintiff's claims are credited, as set forth in Point I above, Plaintiff's allegations are merely stray workplace remarks directed towards, or pertaining to others (such as Sabrina McGeary and club members), that Plaintiff either witnessed as a bystander or heard about from others.   To the extent these remarks were made by her own subordinate, Maltman, aside from the comments about McGeary, it is undisputed that Plaintiff did not complain or even talk about them to any of her co-workers or supervisors.

Plaintiff's complaints to People Services were handled effectively.   The complaint about the McGeary comments was promptly investigated, addressed, and as a result, Maltman was disciplined. (D-16; D-21).   The "white trainer" issue was promptly investigated, addressed, and as a result, Faerman and Taveras were disciplined.   (D-18; D-14; D-15).   While Plaintiff argued that Equinox chose money over enforcing its policies by not excluding the member, based on the member's statements to Taveras during the investigation, Equinox did not take action against the member.   This decision does not amount to "willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." Duarte at 332-333.

Moreover, even if the conduct would otherwise meet the threshold for punitive damages, any award should be mitigated by the fact that Equinox has proven by a preponderance of the evidence that it made good faith attempts to comply with the law.   Specifically, it is beyond dispute that Equinox maintains policies prohibiting discrimination that are disseminated to all employees, and conducts annual non-harassment training that all employees are required to attend.

17

(D-1; Tr. 75, 287-91, 436, 501-02, 532-34, 588-90).  Further, when People Services learned of issues brought by Plaintiff, it investigated and took action.

      **B.**      **The Punitive Damages Award Grossly Exceeds Comparable Civil Penalties Under The NYCHRL.**

Even if not dismissed outright, which it should be, the punitive damages award should be reduced because it grossly exceeds comparable civil penalties.   "Although[] the ratio of the jury's punitive damages award to this civil penalty does not render the award *per se* unconstitutional, the substantial size of the jury's punitive damages award as compared to the relevant civil fine indicates that the award was excessive."  Thomas v. iStar Fin., Inc., 652 F.3d 141, 149 (2d Cir. 2010) (considering the NYCHRL's imposition of civil fines of up to $250,000 for willful, wanton, or malicious acts, and $125,000 absent evidence of willful, wanton, or malicious behavior).  "[A] reviewing court engaged in determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."  Gore, 517 U.S. at 583 (citations and quotations omitted).  Here, the NYCHRL permits the imposition of civil fines of up to $250,000 for "unlawful discriminatory practice [that] was the result of the respondent's willful, wanton[,] or malicious act," and up to $125,000 where there is no evidence of willful, wanton, or malicious behavior.  See N.Y.C. Admin. Code § 8-126(a).

Courts in the Second Circuit have routinely identified the general range in punitive damages awards in discrimination cases as being in 6-figures, especially where, as here, the civil penalty for a NYCHRL violation can be up to $250,000.  For example, in iStar, the Second Circuit upheld the District Court's remittitur of punitive damages from $1.6 million to $190,000.  652 F.3d at 149-50; see also Duarte v. St. Barnabas Hosp., 341 F. Supp. 3d 306, 332-333 (S.D.N.Y. 2018) (listing comparable cases and determining the $750,000 punitive damages award was

excessive and necessitated remittitur to an amount no more than the $125,000 being awarded for compensatory damages); see also MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 546, 569 (S.D.N.Y. June 11, 2012) (remitting the $1 million punitive damage award to $100,000 because, although the employer's discriminatory "conduct could be viewed as 'repeated,'" it was "clear that the [employer's] conduct did not result in physical injury to [plaintiff], nor did it evince an indifference to or reckless disregard for the health or safety of others"); Chisholm v. Mem'l Sloan-Kettering Cancer Ctr., 824 F. Supp. 573, 580 (S.D.N.Y. Nov. 3, 2011) (finding that a remittitur of the jury's award of $1 million in punitive damages to $50,000 was appropriate because defendants' conduct, although reprehensible, did not involve violence or the threat of violence); Tse v. UBS Fin. Servs., 568 F. Supp. 274, 317-18 (S.D.N.Y. 2008) (holding that the $3 million punitive damages award was to be remitted to $300,000 after analyzing comparable cases and following Second Circuit practice of imposing a $300,000 cap).

      The jury award of $10 million is forty (40) times the maximum civil penalty provided for in the NYCHRL.  Accordingly, and in light of the maximum NYCHRL civil penalty of $250,0000, the punitive damages award must be substantially reduced.

### C.    The Punitive and Compensatory Damage Awards Are Grossly Disparate.

      The United States Supreme Court has held that in computing punitive damages, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety."  State Farm Mut. Auto. Ins. Co., 538 U.S. at 425; see also Gore, 517 U.S. at 581 (analyzing the punitive damages award by considering in part the purpose of the 4 -to-1 ratio, concluding that the punitive damages must bear a reasonable relationship to the compensatory damages) (citations and quotations omitted).  More specifically, the Second Circuit has held that in the discrimination context, as is the case here, "where [] the compensatory damages award is imprecise because of the nature of the injury and high when compared with similar cases,

19

[]a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."  See Turley, 774 F.3d at 165 (citations and quotations omitted).

        The Court "exercise[s] relatively stringent control over the size of punitive awards in order to ensure that such damages are 'fair, reasonable, predictable, and proportionate,' to avoid extensive and burdensome social costs, and to reflect the fact that punitive awards are imposed without the protections of criminal trials."  Id. at 164; see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 499, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008) (noting "the stark unpredictability of punitive awards").  Importantly, the court's "jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  State Farm, 538 U.S. at 425; see Duarte, 341 F. Supp. 3d at 328 ("Regarding the magnitude of punitive damage awards, due process requires that they be reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition.") (citations and quotations omitted).  Here, Equinox's conduct does not warrant a $10 million punitive damages award.  See Stampf, 761 F.3d at 209 ("Conduct that involves deceit or malice is more reprehensible than conduct involving mere negligence."); see also Qorrolli v. Metro. Dental Assocs., D.D.S., No. 18 Civ. 6836 (DLC), 2022 U.S. Dist. LEXIS 226228, *28 (S.D.N.Y. Dec. 15, 2022) (determining that the punitive damages attributable to the corporate defendants was unjustifiably large in light of the jury's finding that the corporate defendants failed to maintain a sexual harassment policy).

        Thomas v. iStar Fin., Inc., 652 F.3d 141, 149 (2d Cir. 2010) is factually analogous to the case at bar and demonstrates precisely how $10 million is excessive and grossly disproportionate.  In iStar Fin., the jury found that the former employee's termination was retaliatory, pursuant to Title VII and the NYCHRL, and thus warranted both non-economic pain

and suffering damages and punitive damages.  Id. at 144.  The punitive damages award was based on the finding of fact that iStar's conduct was at the very least "more than merely negligent" when it failed to respond to complaints regarding a colleague's conduct towards other employees.  Id. at 148-49.  There, the court found that "[o]n balance, the moderate level of reprehensibility of iStar's conduct, the large compensatory damages award [based on lost wages], and the relevant case law" necessitated the determination that the jury's original punitive damages award of $1.6 million was excessive, and thus ordered that the plaintiff decide between agreeing to remit his punitive damages award to $190,000, or submitting to a new trial.  Id. at 149-50; see also Villalta, supra, 2021 U.S. Dist. LEXIS 75071, at *52 (S.D.N.Y. April 16, 2021) (holding that it was appropriate to cap punitive damages at 2:1 ration to compensatory damages).

For the reasons discussed above, Defendants submit that the compensatory damages that can be awarded are within the range of $100,000 - $250,000.  Accordingly, if the Court finds that punitive damages are appropriate, the maximum amount of such damages should be less than the civil penalty under the NYCHRL of $250,000.  Even if the Court were to reject the maximum civil penalties under the NYCHRL as the outer limit for punitive damages, the Court should look to Second Circuit caselaw and not impose more than a 1-to-1 or 2-to-1 ratio for punitive damages.  See Turley and Villalta, supra.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order setting aside the jury verdict and granting Defendants' motion for judgment as a matter of law or, in the alternative, granting the motion for a new trial and/or remittitur of the awards of compensatory and punitive damages.

## **CERTIFICATION OF COMPLIANCE**

Pursuant to Rule II(D) of the Individual Practices of Judge John G. Koeltl, dated

July 6, 2022, I hereby certify that the Memorandum of Law submitted herein, excluding the Cover

Page, Certification of Compliance, Table of Contents and Table of Authorities, is 6,921 words,

including footnotes, and that it is otherwise compliant with the Court's applicable formatting rules.

Respectfully submitted,

JACKSON LEWIS P.C.
666 Third Avenue
New York, New York 10017
(212) 545-4000

By: _____
Greg Riolo
Jason A. Zoldessy

ATTORNEYS FOR DEFENDANTS EQUINOX
HOLDINGS, INC. and EQUINOX EAST 92ND
STREET, INC.

Dated: May 22, 2023
        New York, New York

4888-4560-2661, v. 2